Janet Alene PARKER, Surviving Widow, Individually and in her representative capacity as next friend and natural guardian of her sons, Jack Lowe Parker, III, et al., Plaintiffs-Appellants,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 77–3448.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1980.

Rehearing and Rehearing En Banc Denied April 11, 1980.

C. W. (Pete) Harland, Lubbock, Tex., for plaintiffs-appellants.

Roger L. McRoberts, Asst. U. S. Atty., Lubbock, Tex., for defendant-appellee.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

FAY, Circuit Judge:

After exhausting her administrative remedies, Janet A. Parker filed this action individually and as representative for her children under the Federal Tort Claims Act, 28

U.S.C. §§ 1346(b), 2671–2680 (1976), claiming damages for the wrongful death of her husband, Jack Lowe Parker. We are asked to decide whether or not an off-duty serviceman on a four-day "furlough" proceeding on a roadway within a military reservation to his off-base home was acting incident to his military service. The trial court concluded that he was and granted the Government's motion for summary judgment. Disagreeing with this conclusion, we reverse.

## I. FACTS

Specialist Five Jack Lowe Parker lived off the Fort Hood military reservation in a private residence with his wife and two sons. Parker desired time off from work to move to a different home, also off the reservation. On Wednesday, August 28, 1974, Parker requested and received permission to be absent from the end of his normal duty hours that day until Monday, September 2, 1974. After work on the 28th while Parker was on his way home on this leave, a serviceman named Peters drove a military vehicle across the center line and collided head-on with Parker's vehicle in Parker's lane of traffic. Parker died a short time later from injuries he received. Parker was driving a car borrowed from a civilian. The collision occurred on West Range Road, an army maintained road within Fort Hood. The Government contends that Parker was wearing his military fatigues, while appellant states she cannot admit or deny that point. Parker's family is receiving veterans' benefits.[1]

## II. THE REMEDIAL PUZZLE

The Federal Tort Claims Act (FTCA) allows civil actions against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employ-

---

1. Although appellant stated in her Summary of Argument that summary judgment was not proper because material issues of fact existed, Brief of Appellant at 6, this line of attack was not pursued, and in oral argument counsel for appellant conceded that the facts in the case are undisputed. The dispute is over the application of the law to these facts.

ment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1976). *See also* 28 U.S.C. § 2674 (1976) (Government liable as a private person under like circumstances). The twin aims of the FTCA were to provide remedies for wrongful government actions through a waiver of sovereign immunity and to relieve Congress of the burden and the public of the inequities of private bills for relief. Congress created several limitations to this right of action. *Id.* § 2680. One of these excludes "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." *Id.* § 2680(j). No section specifically excludes all actions by members of the military. Nevertheless, the courts rushed in where legislators feared to tread. In a series of decisions now referred to as the *Feres* doctrine, the United States Supreme Court implied an exception to the FTCA and held that no action lies for injury to a member of the armed forces whose activity at the time of injury is "incident to military service." *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Brooks v. United States,* 337 U.S. 49, 51–54, 69 S.Ct. 918, 93 L.Ed. 1200 (1948). *See Stencel Aero Engineering v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). While common sense and a functional approach to the problem might dictate that one driving towards his home after work in a private car is doing nothing "incident to military service," the glosses emanating from this judicial exception complicate the resolution of the issue. The question, therefore, is whether Parker was engaged in activities incident to his military service at the time of his fatal accident. If he was, his family is barred from suing under the FTCA.

## III. EVOLUTION OF THE *FERES* DOCTRINE

The answer to the question whether activity is "incident to military service" determines whether a service member has an FTCA cause of action. One therefore might expect that the same considerations that originally influenced the Supreme Court to create this "incident to service" exception would also elucidate its features. The Supreme Court cases under the *Feres* doctrine, however, offer policy reasons for implying an exception, but do not provide many clear signposts to the parameters of "incident to service."

The first hint that an exception might be carved out of the FTCA for military personnel came in *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). The Supreme Court held that the mere donning of military status does not deprive a claimant of an FTCA action. The Court was impressed that neither the statute's language nor the legislative history required barring all claims by service members. *Id.* at 51–53, 69 S.Ct. 918.[2] The Court observed that neither the FTCA nor the Veterans' Benefits Act contained a clause making it the exclusive remedy or requiring election of remedy.[3] The court reserved for another day the question whether a person injured while engaged in activity incident to military service could pursue an FTCA claim. *Id.* at 52–53, 69 S.Ct. 918.

That day dawned one and a half years later with *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Consolidating three appeals, the *Feres* Court

---

**2.** We are not persuaded that [the statute's phrase] "any claim" means "any claim but that of servicemen." The statute does contain twelve exceptions. § 421. None exclude petitioners' claims. . . . It would be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed.

337 U.S. at 51, 69 S.Ct. at 919. The Court remarked that of 18 bills presented to Con-

gress, only two barred claims of service members and that such an exception had been dropped from the bill ultimately adopted. *Id.* at 51–52, 69 S.Ct. 918.

**3.** The Court did, however, indicate that service members benefits should be set off against FTCA damages to prevent double recovery for the same injuries.

held that injuries received by a member of the armed forces acting incident to military service are not compensable under the FTCA. *Id.* at 146, 71 S.Ct. 153. In *Feres,* the Court reasoned that no private person could conscript an army, and therefore the Government could not be liable "to the same extent as a private individual." *See* 28 U.S.C. § 2674 (1976). The Court felt that the lack of congressional debate on the point meant the legislative history was of little weight. The Court stated that because the FTCA would subject soldiers to the notorious divergencies in state laws, because it would interfere with the "distinctively federal character" of the relation between soldiers and superiors, and because Congress failed to provide for adjustment between the FTCA and veterans benefits acts, an implied exception to the FTCA for activities "incident to military service" was warranted.

With *Brooks* and *Feres* the Court began drawing the "incident to service" line which determines whether injuries are compensable under the FTCA. In *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court confirmed that *Feres* has not overruled *Brooks.* In *Brown,* the Court allowed a veteran to pursue a medical malpractice claim under the FTCA. The Court supplied these rationales for the *Feres* doctrine:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

348 U.S. at 112, 75 S.Ct. at 143.

After these decisions, the Supreme Court delivered a series of opinions that caused

speculation over the *Feres* doctrine's continued viability. *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (prisoners can recover under the FTCA); *Rayonier v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (liability for negligent firefighting); *Indian Towing Co., Inc. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (liability for negligent operation of lighthouse). Factors cited in *Brooks, Feres,* and *Brown* as either for or against allowing a cause of action were discredited in these later decisions. The test for whether an action existed was stated as "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier v. United States,* 352 U.S. at 319, 77 S.Ct. at 376 (1957).[4] In *United States v. Muniz,* the Court did not accept some of the factors found persuasive in *Feres,* 374 U.S. at 159–62, 83 S.Ct. 1850, and stated that *Feres* could be "best explained" by soldiers' relationships to their superiors, the effect of FTCA suits on discipline, and concern over the results if suits for negligent orders were allowed. *Id.* at 162, 83 S.Ct. 1850, citing *United States v. Brown,* 348 U.S. at 112, 75 S.Ct. 141. Although the Court was careful to distinguish *Feres,* some of its theoretical underpinnings had been weakened.

In the most recent Supreme Court statement of the *Brooks-Feres-Brown* line, however, the Court reaffirmed that the doctrine lives. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In *Stencel,* a third party defendant sued the Government for indemnity in a tort suit brought by a serviceman against the third party and the Government. The serviceman's claim was dismissed under *Feres.* The Supreme Court held that the right to indemnity must be

**4.** In *Rayonier,* the Court rejected the notion that FTCA liability extended only to situations in which governments were traditionally liable for employees. 352 U.S. at 318–20, 77 S.Ct. 374. In *Indian Towing,* the Court stated, "[W]e would be attributing bizarre motives to Congress were we to hold that it was predicating

liability on such a completely fortuitous circumstance—the presence of absence of identical private activity." 350 U.S. at 67, 76 S.Ct. at 125. These decisions caused doubt over the weight of the statement in *Feres* that there is no parallel private action for suits against the armed forces.

"limited by the rationale of *Feres* . . ." *Id.* at 674, 97 S.Ct. at 2059. Some of the same factors that were dismissed in *Rayonier* and *Muniz* were dusted off and reasserted in *Stencel*.

First, the Court mentioned the "distinctively federal character" of the soldier-superior relationship, by which the Court apparently means that the Government's liability and the soldier's recovery should not depend upon "the fortuity of where the soldier happened to be stationed . . ." 431 U.S. at 671, 97 S.Ct. at 2058. The second factor was the no-fault compensation scheme established by the Veterans' Benefits Act. As a third factor the Court quoted the elements listed in *Brown*. *Stencel* provides little insight, however, into when activity is "incident to service": the injured serviceman in *Stencel* had clearly been engaged in activity incident to his military service.[5] Indeed, a close reading of *Stencel* reveals that the Supreme Court did not decide whether indemnity would be possible in a *Brooks*-type situation.

The implied exception to the FTCA is therefore still alive, despite continued criticism of its bases. *See* Note, *The Supreme Court and the Tort Claims Act: End of an Enlightened Era?*, 27 Clev.St.L.Rev. 267 (1978); Note, *Stencel Aero Engineering Corp. v. United States: An Expansion of the Feres Doctrine to Include Military Contractors, Subcontractors, and Suppliers*, 29 Hastings L.J. 1217 (1978).

Although it appears that the Supreme Court may have vacillated on the factors supporting the implied exception to the FTCA, one point does emerge from these cases as a caution to those seeking to find meaning in the phrase "incident to military service." The test is not a purely causal one: one cannot merely state that but for the individual's military service, the injury would not have occurred. *Brown* is exemplary. The claimant had injured his knee while in the service and after discharge had received negligent treatment of the knee at a VA hospital. But for Brown's military service, he would neither have hurt his knee nor have been at a VA hospital. Nevertheless the Supreme Court recognized his right to recover against the Government. *See* 348 U.S. at 113, 114, 75 S.Ct. 141 (Black, J., dissenting). Therefore it is insufficient to aver that but for Parker's military service, he would not have been at the scene of the collision. In some cosmic sense "all human events depend upon what has already transpired." *Brooks v. United States*, 337 U.S. at 52, 69 S.Ct. at 920. More is needed for the activity to be "incident to military service."

## IV. THE FACTORS

The district court struggled with *Feres* and *Stencel*, and decided that the receipt of compensation benefits, the distinctively federal character of the relationship between Parker and the military, the relationship between a soldier and his superiors, the place of the injury, and Parker's status at the time of his death compelled summary judgment for the government. *Parker v. United States*, 437 F.Supp. 1039 (N.D.Tex. 1977).

### A. *Veterans' Benefits.*

■ The Veterans' Benefits Act is one of the considerations discussed most inconsistently by the Supreme Court. In *Brooks*, in which the Court allowed the cause of action, the Court emphasized that Congress had included three sections in the FTCA which made the Tort Claims Act the exclusive remedy, yet none of these sections dealt with service members and none required election of remedy. 337 U.S. at 53, 69 S.Ct. 918. The Court concluded that service members could utilize the FTCA, but veterans' benefits would be set off against recoveries. *Id.* at 54, 69 S.Ct. 918. In *Feres*, however, the Court stated that because Congress did not provide a way to adjust veterans' benefits with FTCA recoveries, no remedy for service-connected injuries existed under the FTCA. 340 U.S. at 144, 71 S.Ct. 153.

---

**5.** Captain Donham was injured when the eject system of his aircraft malfunctioned during a mid-air emergency. 431 U.S. at 667–68, 97 S.Ct. 2054.

The Court, in other contexts, has held that an adequate statutory compensation system can substitute for FTCA liability, *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), yet in *Stencel* the Court did not overrule *Brooks* or *Brown*, and it cited the *Brown* rationale with approval. 431 U.S. at 671–72, 97 S.Ct. 2054. The Court reasoned in *Stencel* that veterans' benefits "provide an upper limit. of liability for the Government as to *service-connected* injuries." *Id.* at 673, 97 S.Ct. at 2059 (emphasis added). · In addition, the Government admits that these benefits are generally payable regardless of whether the service member receives a service-connected injury.[6]

Because one purpose of the FTCA is· to guarantee that those injured by the Government will not be remediless, acknowledgment of the benefits system for service-connected injuries indicates that the congressional purpose is not frustrated by the implied exception. The existence and acceptance of the benefits is not, however, an accurate barometer for the threshold question of whether the activity is "incident to service." The compensation system does not exclude FTCA remedies but it is rather the sole remedy once it is determined the injury is service connected. *See United States v. Muniz*, 374 U.S. at 155–56 n.9, 83 S.Ct. 1850. The district court erred in finding that receipt of veterans' benefits compels holding for the Government.

B. *Distinctively Federal Character.*

The "distinctively federal character" of the soldier-Government relation was mentioned in *Feres,* citing *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). 340 U.S. at 143. By this phrase, the Court apparently means that a soldier's recovery and the Government's liability should not depend upon the happenstance of where the injury occurs. *See Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). Under the FTCA, the law of the state of the injury governs. 28 U.S.C. § 1346(b) (1976). The Court also noted that soldiers have no choice over where the Government sends them; injured members of the military would be involuntarily subjected to variations in state laws. We learn from *Brooks* and *Brown,* however, that some FTCA suits are possible. Congress has determined that for FTCA suits, uniformity is unnecessary. Furthermore, Congress has not totally left soldiers at the mercy of state tort law; veterans' benefits are available. While the federal character of the relationship may be relevant to the wisdom of adopting an exception for service members, it does not help define when an injury is incurred "incident to service."

C. *Relation of Soldier to Superiors.*

Another concern expressed by the Supreme Court is the relationship between service members and their ˙supervisors or the effect FTCA suits may˙ have on the maintenance of discipline. *See Stencel Aero Engineering Corp. v. United States,* 431 U.S. at 671–73, 97 S.Ct. 2054; *United States v. Brown,* 348 U.S. at 112, 75 S.Ct. 141. In *Stencel,* the Court was concerned that FTCA actions would create friction because they "would often require members of the Armed Services to testify in court as to each other's decisions and actions." 431 U.S. at 673, 97 S.Ct. at 2059. Nevertheless, this type of testimony would also be required in a *Brooks* or *Brown* situation.[7] The implied exception also is applied even

---

6. The veterans' benefit act requirement that the injury occur "in line of duty," 38 U.S.C. § 101(16) (1976), is deemed to be met if it occurs "on active duty or on authorized leave . . . ." 38 U.S.C. § 105(a) (1976). Parker would have been eligible for veterans benefits even if he had been injured by a private car, on a private road, while on furlough.

7. Maintenance of the *Parker* suit, for instance, might require Specialist Peters to testify, but we doubt he had orders to cross the road at the time of the collision. The army apparently does not dispute that negligence occurred here, and Peters is not subject to the tension that could occur if a direct suit for negligence were possible. *See* 28 U.S.C̈. § 2679(b) (1976) (FTCA remedy is exclusive of any other against federal employee or his estate).

when the injured member is not in the same branch of service as the tortfeasor. *Callaway v. Garber,* 289 F.2d 171 (9th Cir. 1961), *cert. denied,* 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76. *See Uptegrove v. United States,* 600 F.2d 1248 (9th Cir. 1979) (negligence of FAA traffic controllers injures off duty navy service member travelling on Air Force transport on a space-available basis). The discipline connection does not appear to exist here. In the factual determination in any one case, it may be possible that the service member was performing duties of such a character that traditional concepts of military discipline would be undermined should an FTCA action be permitted. Nevertheless in this case, a suit by one leaving the base to attend to his personal affairs, while under no military supervision, will not interfere with military discipline. *See Downes v. United States,* 249 F.Supp. 626, 628 (E.D.N.C.1965). Again, this factor is more relevant to the decision whether to imply an exception than it is to the exception's application.

### D. *Factual Indicia.*

District and circuit courts have emphasized various facts in determining whether an injury occurred during some activity "incident to service." *See generally* 1 L. Jayson, Handling Federal Tort Claims, ch. 5, §§ 150–155 (1964 & Supp.1979); Annot., 31 A.L.R. Fed. 146 (1977). The first question usually asked is what was the duty status of the service member. The second concern, especially with vehicular collisions, is where the injury occurred. Contrary to what one might expect, inquiry into what function the service member was perform-

ing appears to be one of the last questions considered. Upon examining the totality of circumstances, the court determines whether the activity was incident to service.

1. *Duty Status.*—The impact of Parker's duty status is the issue most hotly contested in this case. If an individual has been discharged from the service, his activities are normally not "incident to service." *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Watt v. United States,* 246 F.Supp. 386 (E.D.N.Y. 1965). At the other extreme, one who is on active duty and on duty for the day is acting "incident to service."[8] *See Beaucoudray v. United States,* 490 F.2d 86 (5th Cir. 1974). Between these extremes are degrees of active duty status ranging from furlough or leave to mere release from the day's chores. One on furlough or leave, as in *Brooks,* normally has an FTCA action. *But see Uptegrove v. United States,* 600 F.2d 1248 (9th Cir. 1979). One with only an unexercised right to a pass or who is only off duty for the day usually is held to be acting "incident to service." *E. g., Feres v. United States* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Zoula v. United States,* 217 F.2d 81 (5th Cir. 1954) (unexercised right to pass).[9]

We find that the district court erred in holding that Parker's status was closer to *Feres* than to *Brooks.* Parker had requested and received the right to be absent from his regular duties for four days and five nights. Parker did more than the claimants in *Zoula,* who had merely the unexercised right to a pass. 217 F.2d at 82–83. Parker's status was more like a pass or furlough than those in *Mason* or *Watkins,* in

**8.** This result would ensue even in situations which do not contain the policy considerations of the *Feres* doctrine. An Air Force sergeant does not have an FTCA action when injured while on a military mission when a naval officer negligently drives into the rearend of the private car in which the claimant is riding. *Callaway v. Garber,* 289 F.2d 171 (9th Cir. 1961).

**9.** "Furlough" or "leave" is generally for a longer period and is charged against the soldier's record. A "pass" is a discretionary time off privilege granted by the supervising officer and

not charged against the record. In either case, the service member can be recalled to work. Since 1972 formal passes have not been necessary for service members not on their regular duty hours. Therefore, "off-duty" service members who need not report until the next day, now technically have the same status as members on "pass." *See Zoula v. United States,* 217 F.2d 81, 82–83 n.1 (5th Cir. 1954); *Watkins v. United States,* 462 F.Supp. 980, 986–89 (S.D.Ga.1977), *aff'd per curiam,* 587 F.2d 279 (5th Cir. 1979).

which the plaintiffs were merely off duty for the day. *Mason v. United States,* 568 F.2d 1135 (5th Cir. 1978); *Watkins v. United States,* 462 F.Supp. 980, 986–89 (S.D.Ga. 1977), *aff'd per curiam,* 587 F.2d 279 (5th Cir. 1979). While Parker technically might not have been on a "furlough" or "pass," his exercised right to be absent for four days was actually more like a furlough than mere release from the day's duties.[10]

2. *On or Off the Reservation.*—Another factor looked to in determining whether the activity was "incident to service" is where the injury occurred. If the soldier is on furlough and off the military reservation, *Brooks* teaches that an action lies under the FTCA. If the injury occurs on the base, it is more likely that the injured service member was engaged in activity incident to service. The occurrence of an on-the-reservation injury, however, does not immediately trigger application of *Feres.* If the injury occurred on the base, the court must proceed to the further inquiry of what function the soldier was performing at the time of the injury in order to ascertain the totality of circumstances.

It would be easy to state that *Brooks* involved an injury off the base, the *Feres* cases occurred on the military reservation, therefore, Parker's on-the-base collision should not give rise to an FTCA cause of action. Nevertheless, where the injury occurred should not be emphasized above all other factors. *Cf. Avasthi v. United States,* 608 F.2d 1059 (5th Cir. 1979) (FECA liability). Moreover, in cases quite similar to *Parker,* the courts have allowed FTCA actions even though the injuries occurred on the military reservation. *Hand v. United States,* 260 F.Supp. 38 (M.D.Ga.1966); *Downes v. United States,* 249 F.Supp. 626 (E.D.N.C.1965). When soldiers are returning to the base, but have not yet reached the premises line when the collision occurs, FTCA actions are permitted. *E. g., Knecht v. United States,* 144 F.Supp. 786

(E.D.Pa.1956), *aff'd,* 242 F.2d 929 (3d Cir. 1957); *Barnes v. United States,* 103 F.Supp. 51 (W.D.Ky.1952). Rote application of a "baseline" rule which would allow recovery in those cases but deny it in a *Parker* situation is illogical and abrogates the responsibility to look at all the circumstances to see if the activity was "incident to service." Once it is determined that the service members' duty status might warrant allowing the action but that the injury occurred on the base, the court should go further and inquire into precisely what the person was doing when injured.

3. *Activity.*—The inquiry finally turns to what Parker was doing at the time he was injured. Parker was not directly subject to military control; he was not under the compulsion of military orders; he was not performing any military mission. Parker was not even attending to personal affairs, such as shopping, or engaging in activities arising from life on the base, such as recreational activities. Parker was merely passing through the base on his way home. Keeping in mind that "incident" does not mean that a strict "but for" test applies, we do not find that Parker was engaged in any activity incident to his service.

This court has stated that *Feres* limits *Brooks* to its facts. *Mason v. United States,* 568 F.2d 1135, 1136 (5th Cir. 1978) (*per curiam*); *Zoula v. United States,* 217 F.2d 81, 83 (5th Cir. 1954). This statement, however, was first written before the Supreme Court's decision in *Brown,* which went beyond the factual boundaries of *Brooks.* Whether the exceptions to liability and the FTCA's waiver of sovereign immunity should be read broadly or narrowly are questions that have been answered inconsistently over the thirty-odd years since the statute's enactment. *Compare Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) *and Laird v. Nelms,* 406

---

**10.** Much has been made of Parker's being on "active duty," subject to recall, despite his four-day release from duty. The Government admits, however, that even soldiers on furlough can be recalled, yet those soldiers have an FTCA action if injured. We find the "active duty" distinction unpersuasive. *See Hand v. United States,* 260 F.Supp. 38, 41 (M.D.Ga. 1966).

U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972) *with United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). We need not debate the breadth of the exceptions, however, because *Zoula* and *Mason* involve factual settings totally different from *Parker*. The plaintiffs in those cases were without a pass and were residing on the military reservation. The *Zoula* plaintiffs were attending to personal business during off-duty hours. Their activities were more *incident* to their military careers. Parker, however, had a four-day pass, had no further business on the base, and was merely driving through on his way to his home off the reservation. A distinction can be drawn between those cases involving activities arising from life on the military reservation, and those in which presence on the base has little to do with the soldier's military service. *Cf. Healy v. United States,* 192 F.Supp. 325, 327 n.8 (S.D.N.Y.1961), *aff'd,* 295 F.2d 958 (2d Cir. 1961) ("incident" to service includes activities arising from life on the military reservation). For instance, in *Feres* the off-duty soldier died when his barracks burned while he was sleeping. *Zoula* and *Mason* are more similar to *Feres* ; *Parker* is closer to *Brooks*.

4. *Incident to Service.*—Parker's four-day right to be absent resembled the furlough in *Brooks*. Because the collision did not occur off the base, the court should have looked to the function Parker was performing at the time of his death, which was not related to his military service. Parker was not acting incident to his service at the time of his death.

## V. CONCLUSION

We conclude the district court erred in granting the Government summary judgment. The Parker family's receipt of veterans benefits does not foreclose an FTCA cause of action. Parker had received the right to be off duty for four days; he was driving a civilian vehicle towards his home off the military reservation; he was not performing any military function. His activities were not "incident to service," and

the Government should be liable like any "private person." The district court is REVERSED and the cause REMANDED for proceedings consistent with this opinion.