Robert E. DENHAM, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. W–85–CA–208.

United States District Court, W.D. Texas, Waco Division.

Oct. 29, 1986.

Arthur Baron, P.A., Orlando, Fla., for plaintiff.

Gordon Laws, Asst. U.S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, JR., District Judge.

This action for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–72, 2674–80 (1982), came before the Court for trial on September 29th through October 7th, 1986. Based on the admitted evidence and stipulations of fact, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## I. *Factual Background*

On May 28, 1983, the Plaintiff, Robert E. Denham, was on active duty in the United States Army, stationed at Fort Hood, Texas. On that date, the Plaintiff and several friends, also active duty servicemen, were on liberty and went to Temple Lake Park in Belton Lake, Belton, Texas.

At the time of the events in this case, Temple Lake Park was owned and operated by the United States Army Corps of Engineers (hereinafter referred to as "the Corps"), an agency of the United States Army and of the United States of America. Temple Lake Park contains a designated swimming area, delineated by the presence of surface buoys, which form a rectangular circumference around the swimming area. The buoys are secured by concrete anchors which are approximately one to one and a half feet in diameter. The concrete anchors which secure the buoys are manufactured, placed in position, and maintained by the Corps.

The operation, maintenance, and control of Temple Lake Park, a part of a flood control reservoir, is within the exclusive jurisdiction of the Army Corps of Engineers. In creating the designated swimming area at Temple Lake Park in approximately 1972, the Corps brought in sand, backgraded, leveled, and sloped the area. The Corps' maintenance records indicate that the swimming area was replenished with sand in 1975. The area, however, did not receive any further replenishment until after the Plaintiff's accident in 1983, a period of at least eight years.

Testimony from Corps employees indicates that prior to the Plaintiff's injury, the Corps did not inspect the swimming area regularly, or even periodically, for either natural or artificial hazards. In fact, approximately one year after the occurrence of the accident, an investigator for the Plaintiff visited the site of the injury and found an abandoned cement anchor unconnected to any buoy in the area. Additionally, in July of 1984, the same investigator again visited the Temple Lake Park designated swimming area and took photographs, which were admitted into evidence, of other unattached concrete anchors in the swimming area. Furthermore, there were not any signs indicating that a lifeguard was not on duty and that one should swim at his own risk.

Prior to May of 1983, Corps employees had been aware that some of the buoys had become unattached from their anchors, leaving the anchors on the bottom of the swimming area. Nothing was done to try and locate and remove such anchors.

On the date of the accident, the Plaintiff and his friends went to Temple Lake Park for recreational purposes. While at the park, it appears that the Plaintiff consumed a sufficient amount of alcohol to render him intoxicated at a level significantly above the legal intoxication rate. The injury which gave rise to this action occurred in the late afternoon shortly before Plaintiff and his friends prepared to leave the park. The Plaintiff, Robert E. Denham, entered the lake in a spot contained within the designated swimming area so that he could wash off a knee he had injured earlier in the day. Upon entering the water, Denham executed a shallow-water dive from knee deep-water into waist-deep water. He immediately struck his head upon a solid underwater obstruction resting upon the lake bottom which could not be seen from the surface, and which the Court finds from a preponderance of the evidence to have been an abandoned concrete anchor. As a result of the impact, Denham suffered a burst compression fracture to his fifth cervical vertebra ultimately rendering him a quadriplegic.

As a result of the injuries received by Plaintiff, and the circumstances surrounding the same, Robert Denham instituted this action against the Defendant, the United States of America, seeking approximately five (5) million dollars in compensatory damages.

## II. *The Federal Tort Claims Act*

The Federal Tort Claims Act, 28 U.S.C. §§ 2671–72, 2674–80 (1982) (hereinafter referred to as "FTCA") is the basis for the Plaintiff's claim against the Government in this suit. Under the FTCA, the liability of the United States is the same as that of a private person under like circumstances. *See* 28 U.S.C. § 2674. Specifically, the FTCA gives the District Courts jurisdiction for all claims against the Government for losses

... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). These provisions, given their plain and natural meaning, make the United States liable to Plaintiff for the Corps' negligence in maintaining the swimming area if Texas law would impose liability on private persons under similar circumstances. *See Rayonier, Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957). Before addressing the applicable Texas law, the Court will first discuss the Government's contentions that Plaintiff's claim is barred by 1) the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a); 2) the *Feres* doctrine; and 3) the immunity provision of the Flood Control Act, 33 U.S.C. § 702c.

### III. *The Applicability of the Discretionary Function Exception of the FTCA*

■ The discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), is a limitation on the waiver of sovereign immunity and the subject-matter jurisdiction of the federal courts. *See Dalehite v. United States,* 346 U.S. 15, 18, 73 S.Ct. 956, 959, 97 L.Ed. 1427 (1953). Under the terms of the discretionary function exception, the United States may not be liable for "an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation," or for "the exercise or performance or the failure to exercise or perform a discretionary function or duty...." *See* 28 U.S.C. § 2680(a). The Government contends that the specific acts of negligence alleged by the Plaintiff are discretionary acts on the part of the United States, and therefore cannot be the basis of Government liability under the FTCA.

The Court notes that the Fifth Circuit has stated that "once the government has made a decision to act the government is responsible for acts negligently carried out even though discretionary decisions are constantly made as to how those acts are carried out." *Wysinger v. United States,* 784 F.2d 1252, 1253 (5th Cir.1986). In the instant case, the Court finds that the critical discretionary decision was in deciding whether to create a designated swimming area at Temple Lake Park. Accordingly, the Government created the danger which gave rise to Denham's injury after the initial discretionary decision had been made. As such, Plaintiff's suit is not barred by the discretionary function exception. In fact, the Fifth Circuit recently stated in a suit where § 2680(a) applied, that the discretionary function exception would not be applicable if, as in this case, "the government had negligently failed to warn of dangers at the swimming site." *Wysinger v. United States,* 784 F.2d 1252, 1254 (5th Cir.1986).

### IV. *The Applicability of the Feres Doctrine*

In presenting its case, the Government has also contended that Plaintiff's action is barred by the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The *Feres* doctrine provides that the Government is not liable under the Federal Tort Claims Act "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

■ In determining whether an injury is "incident to military service," the Fifth Circuit developed a three-part test to be applied by the Court. *See Parker v. United States,* 611 F.2d 1007, 1013–15 (5th Cir. 1980). The specific factors to be considered in making the "incident to service" determination are the duty status of the serviceman, the site of the injury, and the activity of the serviceman at the time of the injury. In applying the *Parker* test, the Court is to examine the totality of the circumstances surrounding the Plaintiff's injury. *See Adams v. United States,* 728 F.2d 736, 738–39 (5th Cir.1984).

## A. *Duty Status*

■ The duty status of the serviceman is generally considered the most important factor of the *Parker* test; however, no single factor is necessarily considered dispositive of the issue. *See id.* at 739; *Parker v. United States,* 611 F.2d 1007, 1013–14. In this case, the Plaintiff, a Fort Hood soldier, was off base on a one-day pass on the date of the accident. Since one who is only off-duty for a day is still considered to be on "active-duty," the Court finds that Denham was on "active-duty" at the time of the accident. *See, e.g., Adams v. United States,* 728 F.2d 736, 739 (5th Cir.1983); *Warner v. United States,* 720 F.2d 837, 839 (5th Cir.1983); *Parker v. United States,* 611 F.2d 1007, 1013–14 (5th Cir.1980).

## B. *Place of Injury and Activity*

■ The two additional factors to be considered under the *Parker* test are the location of the Plaintiff when the injury occurred and what he was doing at the time of the injury. *See Parker v. United States,* 611 F.2d 1007, 1014–15 (5th Cir. 1980). If the accident occurred off-base, it is more likely that the injured service member was not engaged in activity incident to service. *See id.* at 1014. In the present case, the accident occurred at Temple Lake Park in the Belton Lake Park complex. The Court notes that the Belton Lake Park complex is not located on the Fort Hood base; therefore, the accident occurred off-base.

## C. *Activity at Time of Injury*

■ The final inquiry examines what Denham was doing at the time he was injured. Here, Denham had gone to Temple Lake Park for the day to swim with his friends. The Plaintiff was not swimming in any exercises promulgated or sponsored by the military, but was merely swimming at his own leisure when the accident occurred. The Fifth Circuit in *Parker* found it persuasive that the Plaintiff in that case "was not ... subject to military control" in reaching the decision that the Plaintiff was not acting incident to service. *See id.* at 1014. Likewise, this Court concludes that the circumstances of this case are not such as to call into play the policy considerations underlying the *Feres* doctrine so as to preclude Plaintiff's FTCA claim.

## V. *The Applicability of the Flood Control Act*

The Government is also contending that the Flood Control Act's immunity provision, 33 U.S.C. § 702c, precludes the Plaintiff from prevailing on his claim. The immunity provision provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. The terms "flood" and "floodwaters," as contained within the provision, refers to all waters within a federal flood control project for purposes of, or related to, flood control. *See United States v. James,* — U.S. ——, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). In this suit, it is undisputed that the designated swimming area at Temple Lake Park is part of a flood control reservoir operated by the Army Corps of Engineers.

The United States Supreme Court recently construed § 702c in *United States v. James, supra. James* involved two instances where individuals while participating in recreational activities were drawn through the retaining structures of a flood control project. *See id.* at 3118–19. The basis of the complaint in *James* was that the United States was both negligent and grossly negligent in failing to post signs or buoys warning boats and recreational users from getting too near the retaining structures during discharge. *See id.* at 3119. The Supreme Court found that it was the release of the waters from the flood control project which caused the injuries, not the failure to warn, as alleged by the Plaintiffs. *See id.* at 3124. As such, the Supreme Court held that the Government was immune from liability because the damage was caused "by flood or flood waters" and that the immunity provision of the Flood Control Act applied. *See James* at 3124–25.

In determining whether Robert Denham, the Plaintiff in the case at bar, may recover against the Government, the Court must first determine whether the *James* decision precludes his recovery. In making this determination, the Court must examine 1) whether the alleged acts of negligence by the Government are part of the "management" of the flood control project, and therefore, preclude recovery; and 2) whether Denham's injuries were proximately caused by the operation of the dam as a flood control project which would also bar recovery if answered affirmatively.

### A. The "Management Issue"

■ In this suit, the Government claims that the mismanagement of the Temple Lake Park recreational facility is within the scope of management at the Belton Lake flood control project and thus immunizes the Government from suit. The Government bases its assertion on the language in *James* which states that "the manner in which to convey warnings, including the negligent failure to do so, is part of the 'management' of a flood control project." *Id.* at 3124. This Court, however, is of the opinion that a different result in this suit is proper because the fact situation in the instant case is clearly distinguishable from *United States v. James*. The Court believes that a different result is proper in this case because the Flood Control Act does not bar an action against the United States under the FTCA when, as here, the Plaintiff alleges an injury unconnected with the operation of the facility as a flood control project. *See Hayes v. United States*, 585 F.2d 701, 702 (4th Cir.1978) (cited as authoritative by U.S. Supreme Court in *James* ); *see also Graci v. United States*, 456 F.2d 20, 27 (5th Cir.1971).

This Court, having reviewed the *James* decision, finds that the alleged acts of negligence by the Government are *not* part of the management of the flood control project, but are instead part of the management of the dam as a recreational facility. In *James*, the Supreme Court was faced with a fact situation wherein a warning as to the flood waters at the dam itself was inadequate. *See James*, 106 S.Ct. at 3119. The *James* Court, therefore, was not required to comment on warning signs which were unrelated to the expected operations of flood control, such as in the case at bar. This Court believes that the management decision of whether to warn of a rapid current at the reservoir is wholly independent and distinguishable from the decision to warn of hidden dangers at a designated swimming area or to fail to at least attempt to remove dangerous obstacles from the bottom of the swimming area.

### B. The "Causation" Issue

[7] The next issue to be addressed by the Court is whether Robert Denham's injuries were proximately caused by the operation of the dam as a flood control project or were the result of the dam's operation as a recreational facility. In *United States v. James*, the Supreme Court quoted a Fourth Circuit case and emphasized the following language:

> If the Plaintiff could prove damage ... as a result of the dam's operation as a recreational facility without relation to the operation of the dam as a flood control project, he would avoid the absolute bar of § 702c.

*United States v. James*, —— U.S. ——, 106 S.Ct. 3116, 3122 n. 7, 92 L.Ed.2d 483 (1986) *citing Hayes v. United States*, 585 F.2d 701, 702–03 (4th Cir.1978).

Accordingly, the Court is of the opinion that the instant case is unlike the situation in *James* in that the injuries sustained in *James* occurred as a result of a dam's operation as a flood control project; whereas the injury to Robert Denham arose out of the dam's use as a recreational facility. This distinction is most clearly seen by comparing and contrasting the factual situation in *James* with the facts in this case. First, the current caused by the release of water from the dam caused the injuries in *James;* however, the flood waters were not even released at Belton Lake Park and played no part in Denham's injury. *See James*, 106 S.Ct. at 3119. Second, the

drownings which were the basis of *James* were proximately caused by the dam and dam waters, while Denham's injury was proximately caused by the striking of his head on a hidden concrete anchor abandoned by the Corps of Engineers. *See id.* Third, the negligence of the United States in *James* dealt specifically with a danger created by a dam, while the danger created by the Corps in the instant case resulted from the Corps' operation of a recreational facility, and bears no relationship to a dam or control of flood waters. *See id.*

To summarize, the Court finds that if a Plaintiff alleges and proves an injury unconnected with the operation of a facility as a flood control project, the *James* decision will not bar suit against the United States. The cause of a plaintiff's injury should be reviewed on a case by case basis to determine the relationship of the injury to the control, retention, and/or release of flood waters. As such, the Court holds that the Flood Control Act's immunity provision does not bar Robert Denham's claim against the United States.

### VI. *The Applicable Duty of Care*

■ As noted previously, the test established by the Federal Tort Claims Act for determining the Government's liability is whether a private person would be responsible for similar negligence under the laws of the state where the acts occurred. *See* 28 U.S.C. § 2674. In this case, the Court must apply the laws of the State of Texas since that is the state in which Denham's accident occurred. The law relevant to this cause of action is contained in Chapter seventy-five (75) of the Texas Civil Practice and Remedies Code entitled, "Limitations of Landowners' Liability." Specifically § 75.002 provides:

> If a owner, lessee, or occupant of real property gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not: ...
> (2) owe to the person to whom permission is granted a greater degree of care

than is owed to a trespasser on the premises.

It is also important to note that this particular chapter of the Code does not relieve the landowner from liability for "deliberate, wilful, or malicious injury to a person." *See* Tex.Civ.Prac. & Rem.Code § 75.003 (Vernon 1986).

As required under the Texas Civil Practice and Remedies Code, the United States owed a duty to Robert Denham similar to that duty owed to a trespasser and further not to wilfully cause injury to him. According to the applicable Texas case law, the duty owed to a trespasser is to refrain from committing gross negligence. *See Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The Texas definition of gross negligence is:

> [t]hat entire want of care which would raise the belief that the act or omission complained of was of the result of a conscious indifference to the right or welfare of the person or persons to be effected by it.

*Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). A plaintiff may prove gross negligence by establishing that the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. *See Williams v. Steves Industries, Inc.*, 669 S.W.2d 570, 573 (Tex.1985). In addition, a plaintiff may prove a defendant's gross negligence by establishing that under the surrounding circumstances, a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *See id.*

### A. *The Government's Gross Negligence*

■ Applying the above-mentioned legal principles to the instant case, the Court finds that the United States committed gross negligence which significantly contributed to the Plaintiff's injury. Robert Denham, as did all the other patrons to Temple Lake Park, reasonably expected that a designated swimming area surrounded by buoys was one that would be safe for swimmers and non-swimmers alike. Unfor-

tunately for Robert Denham, the Corps of Engineers in May of 1983 maintained a swimming area which was abnormally dangerous. The wilful failure to regularly check the bottom of the lake for underwater hazards and, in particular, for not examining it after becoming aware that more than one buoy anchor had become unattached demonstrated a conscious indifference to the safety of the facility's visitors. It is easy to foresee that serious injury could result from either a person stumbling over an abandoned anchor or a swimmer diving into the water and striking his head upon one of the hidden anchors. Accordingly, the Court is of the opinion that the Plaintiff has met his burden of proving that the Defendant's conduct constitutes gross negligence; therefore, the Court finds that the Government's negligence contributed seventy (70) percent to the plaintiff's injury.

### B. *The Plaintiff's Negligence*

█ The United States claims that the Plaintiff, Robert Denham was contributorily negligent and that his negligence proximately caused his injury. A plaintiff will be found to be contributorily negligent when he could have "reasonably ... foreseen that the event in question, or some similar event, would occur." *Trinity River Authority v. Williams*, 689 S.W.2d 883, 886 (Tex.1985). There is evidence that Robert Denham, at the very least, should have reasonably foreseen the potential for danger associated with diving into waist-deep murky water in an intoxicated condition. As such, the Court finds that the Plaintiff was contributorily negligent and that his ordinary negligence contributed thirty (30) percent to his own injury.

### VII. *Damages*

█ The Court, having considered the testimony and evidence relating to the issue of damages, finds that the total past and future economic loss and medical expenses entitle the Plaintiff to an award of $2,437,947.00. The Court further finds that the Plaintiff is also entitled to a sum of $500,000.00 for pain and suffering.

Since, however, the Plaintiff's negligence contributed thirty (30) percent to his own injury, the above-mentioned award of damages should be reduced accordingly. The Texas comparative negligence statute, Texas Civil Practice and Remedies Code § 33.001(b), provides that "[d]amages allowed are diminished in proportion to the amount of negligence attributed to the person recovering." The Plaintiff, however, contends that his ordinary negligence and the Government's gross negligence cannot be compared under the comparative negligence statute because ordinary and gross negligence are of such disparate types as to preclude comparison. A Texas Court of Appeals recently addressed this issue and held that a defendant's gross negligence may be compared with a plaintiff's ordinary negligence to determine the plaintiff's recovery of actual damages. *See Jannette v. Deprez*, 701 S.W.2d 56, 58 (Tex.App.— Dallas 1985, writ ref'd n.r.e.). Therefore, the Plaintiff's total award of $2,937,947.00 is reduced by thirty percent, the amount of negligence attributed to the Plaintiff, to now total $2,056,562.00.

Furthermore, the United States is entitled to have deducted from the Court's award the sums of $104,000.00 for past V.A. benefit payments and $820,545.00 for the present value of future V.A. benefit payments. As the United States Supreme Court has stated:

> [c]ertain elements of tort damages may be the equivalent of elements taken into account in providing disability payments. It would seem incongruous ... if the United States should have to pay in tort for hospital expenses it had already paid....

*Brooks v. United States*, 337 U.S. 49, 53–54, 69 S.Ct. 918, 920–21, 93 L.Ed. 1200 (1949). Accordingly the Plaintiff's net recovery, subject to the offset of other settlements, is $1,131,617.00.

█ The final issue to be addressed by the Court is whether Robert Denham is entitled to pre-judgment interest against

the United States. The Court notes that the Federal Tort Claims Act states that the "United States ... shall not be liable for interest prior to judgment...." Accordingly, the Court finds that the Plaintiff is not entitled to pre-judgment interest. Judgment shall therefore be entered that Plaintiff recover $1,131,617.00 against Defendant.