Robert MILLEVILLE, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 89–364–Civ–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 27, 1990.

Joseph M. Ripley, Jr., Jacksonville, Fla., for plaintiffs.

Ralph J. Lee, Asst. U.S. Atty., Jacksonville, Fla., for defendant.

## ORDER

JOHN H. MOORE, II, District Judge.

■ The above-styled cause is before the Court upon the Defendant UNITED STATES' Renewed Motion to Dismiss for Lack of Jurisdiction with Incorporated Memorandum of Law, filed herein on October 19, 1990. Plaintiffs filed their response to said motion on October 29, 1990. The United States is seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) due to lack of subject matter jurisdiction. When considering a motion to dismiss under Rule 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

### Background

Plaintiff Chief Petty Officer Robert Milleville served in the United States Navy as a special Navy Recruiter. He and his family lived at the Naval Air Station in Jacksonville, Florida, and he regularly commuted to his off-base recruiting station. On August 17, 1987, while driving from his quarters to his work station, he was involved in a collision with a vehicle driven by an employee of the Federal Highway Administration (FHWA), who was acting within the scope of his employment.

As a result of this accident, Milleville suffered severe injuries, including partial paralysis. After submitting their claim to the FHWA, which took no action on it within six months, the Plaintiffs initiated this action. *See* 28 U.S.C. § 2675(a).

### Discussion

It is well established that the United States may not be sued without its consent. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Without an express waiver of sovereign immunity, "a district court has no jurisdiction to entertain a suit against the United States." *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156 (5th Cir. Unit B 1981). Due to the enactment of the

Federal Tort Claims Act (FTCA), the government waived its right to sovereign immunity arising out of tortious conduct by governmental employees who are acting within the scope of their employment, under circumstances in which the United States, if it were a private person, would be liable to the plaintiff under the law of the place where the tortious act occurred. *See* 28 U.S.C. §§ 1346(b), 2674. This waiver, however, is limited by exceptions contained within the FTCA and by judicial interpretation of the FTCA.

■ In *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that Congress did not intend to waive governmental immunity for injuries to servicemen arising out of activities incident to military service. The Fifth Circuit, in *Parker v. United States*, 611 F.2d 1007, developed a three-part test for determining whether the activity of a serviceman is incident to military service. These factors include (1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of the injury. *Parker*, 611 F.2d at 1013. Upon examining the entire set of circumstances, and evaluating the relative weight of these factors, the court determines whether the activity was incident to service. *See Pierce v. United States*, 813 F.2d 349 (11th Cir.1987).

### 1. Duty Status

■ In determining the duty status of an injured serviceman, courts have generally distinguished their status between being on furlough or leave as compared to merely being released from one's duties for the day. *Parker*, 611 F.2d at 1013. Usually, a serviceman injured while on furlough or leave has an action under the FTCA. *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). One who is only off duty for the day, however, is normally held to be acting incident to service. *Mason v. United States*, 568 F.2d 1135 (5th Cir.1978); *Watkins v. United States*, 462 F.Supp. 980 (S.D.Ga.1977), *aff'd per curiam*, 587 F.2d 279 (5th Cir.1979).

Milleville argues that he was not on active duty because he was authorized leave until 8:00 a.m. on the date of the accident, which occurred at approximately 7:55 a.m. However, the facts here indicate that he returned from leave one day early and proceeded to contact his recruiting post by telephone to announce his availability and thereby save one day of leave. Military records reveal that Milleville had returned from leave as of 8:00 a.m. the day before the accident. Since that date was a Sunday, he was not required to report to his duty station. In light of these circumstances, his military status prior to the accident more closely resembles one who is merely released from the day's duties. Therefore, the Court finds that Milleville was on active duty the following morning when the accident occurred.

### 2. Situs of Injury

The motor vehicle collision occurred on a public highway less than two miles from Milleville's recruiting station. When an injury occurs on a military reservation, it is more likely that it was the result of activity incident to military service. *Parker*, 611 F.2d at 1014. Yet courts have also permitted FTCA actions when servicemen are involved in collisions while returning to their base, but prior to reaching the actual premises. *Parker*, 611 F.2d at 1014. (citations omitted). The Court finds that in this case the situs factor is not particularly determinative since Milleville lived on-base and worked at an off-base work station, and, therefore, he was required to use the public roads in furtherance of his duties.

### 3. Activity of the Serviceman

At the time of the injury, Milleville was driving his vehicle to his work station where he was required to report at 8:00 a.m. He was under the compulsion of military orders due to his required arrival time and failure to report in a timely manner would have subjected him to military discipline. Clearly, if he was not on active duty in the military, he would not have been in the same place at the same time with the same purpose. *Shaw v. United States*, 854 F.2d 360, 363 (10th Cir.1988).

■ In sum, the Court finds that, based on the totality of the circumstances, and after giving appropriate significance to each of the factors outlined in *Parker*, Milleville was injured in the course of activities incident to military service. Next, the Court must analyze the underlying rationales of the *Feres* doctrine in relation to the specific facts presented to determine whether application of the doctrine would further those rationales.

■ Under *Feres* and its progeny, the United States Supreme Court has developed three rationales which support the doctrine. These justifications include (1) the "distinctively federal" relationship between the government and the members of the armed forces, (2) the substitute for tort liability provided by the Veterans Benefits Act, and (3) the effects of the maintenance of such suits on military discipline. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

Since it has been determined that Milleville was injured while engaged in activities incident to his military service, the Court finds that the first rationale—the federal relationship—is implicated here. The second rationale underlying the *Feres* doctrine is also implicated due to the substantial veteran's benefits which Milleville is currently receiving.

While ·it is unclear how much weight should be given to the first two factors, the potential interference with military discipline has continually been the most compelling rationale in support of the *Feres* doctrine.[1] The Supreme Court has explained:

> Even if military negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission. Moreover, military discipline involves not only obedience to orders, but more gener-

ally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

*Johnson*, 107 S.Ct. at 2069.

In *Johnson*, the widow of a Coast Guard helicopter pilot brought a wrongful death action against the United States pursuant to the FTCA, alleging that the negligence of an air traffic controller of the Federal Aviation Authority (FAA), a civilian agency of the federal government, had caused the crash in which her husband died. Relying on *Feres*, the district court dismissed the suit. The Eleventh Circuit Court of Appeals reversed, distinguishing *Feres* from cases in which negligence is alleged on the part of a government employee who is not a member of the military. The Court held that maintenance of the suit would have no impact on military discipline. The United States Supreme Court reversed, holding that the *Feres* doctrine bars an FTCA suit on behalf of a serviceman killed incident to service even if the alleged negligence was by civilian employees of the federal government. The Court placed emphasis upon two factors in its finding that the maintenance of the action would interfere with military discipline. First, the Court pointed out that the serviceman was killed while performing a dangerous rescue mission. Second, the Court noted that civilian employees of the FAA often play an integral role in military activities and an inquiry into their activities may call certain military judgments into question. *Johnson*, 107 S.Ct. at 2069. The Court found that, under those circumstances, the case fell "within the heart of the *Feres* doctrine as it consistently has been articulated." *Johnson*, 107 S.Ct. at 2069.

Plaintiffs, like the widow in *Johnson*, bring this action based upon the negligence

---

1. In *United States v. Shearer*, 473 U.S. 52, 58, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985), the United States Supreme Court found the third rationale, military discipline, to be determinative and indicated that the other two rationales were "no longer controlling." However, in *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), the Court discussed all three rationales in its *Feres* analysis.

of a civilian employee of the federal government. However, under the facts of this case, it is difficult, if not impossible, to envision how the maintenance of this action would interfere with military discipline. The record does not indicate that the conduct of the alleged tortfeasor was even remotely connected to the military. The government does not explain how the testimony of this FHWA employee would implicate the military services. The allegations do not involve any second-guessing with regard to the discipline, supervision, or control of the serviceman, nor is there any questioning of military judgments. In short, the Court finds that this case would not affect the military disciplinary structure if it were to proceed to trial. To apply the *Feres* doctrine as a bar to Plaintiffs' suit would not further the underlying purpose of the doctrine. Accordingly, the United States' motion to dismiss must be denied.

Having made this determination, the Court also recognizes that this action involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation. Therefore, in accordance with 28 U.S.C. § 1292(b), this Court certifies that this order shall be immediately appealable to the Eleventh Circuit Court of Appeals for the purpose of determining the jurisdictional issue of whether, under these particular facts, Plaintiffs' claim is barred by the *Feres* doctrine. In addition, the Court finds that these proceedings shall be stayed pending the outcome of this interlocutory appeal.

Accordingly, it is now

ORDERED AND ADJUDGED:

1. That the United States' Renewed Motion to Dismiss for Lack of Jurisdiction with Incorporated Memorandum of Law, filed herein on October 19, 1990, be and the same is hereby DENIED.

2. That, pursuant to 28 U.S.C. § 1292(b), this order shall be immediately appealable to the Eleventh Circuit Court of Appeals. Under § 1292(b), an appeal must be taken within ten (10) days of the date of this order.

3. That these proceedings shall be STAYED pending the resolution of the interlocutory appeal.

DONE AND ORDERED.