David E. ELLIOTT, Jr., an incapacitated adult By and Through his guardian, Barbara V. ELLIOTT, Barbara V. Elliott, Individually, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 93–8027.

United States Court of Appeals, Eleventh Circuit.

Feb. 15, 1994.

**1556**

H. Randolph Aderhold, Jr., Asst. U.S. Atty., Macon, GA, Vicki Raines Crowell, Dept. of the Army, Office of the Staff Judge Advocate, Fort Benning, GA, Lowell V. Sturgill, Jr., Robert S. Greenspan, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Paul Van Kilpatrick, Max Reginald McGlamry, Charles Neal Pope, Columbus, GA, Wade H. Tomlinson, III, Michael L. McGlamry, Steven W. Saccoccia, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA, for plaintiffs-appellees.

Before HATCHETT, Circuit Judge, GODBOLD and FAY*, Senior Circuit Judges.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

HATCHETT, Circuit Judge:

Applying Supreme Court and Eleventh Circuit precedent, we affirm the district court's ruling that the *Feres* doctrine (*Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)) does not bar a member of the armed forces from filing a lawsuit against the United States for injuries suffered due to the negligence of a branch of the armed forces where the member of the armed forces is on active duty, but suffers the injury while on leave outside a combat zone while engaged in activities unrelated to combat training or to the mission of the service member's unit.

## FACTS

David Elliott, Jr., a staff sergeant in the U.S. Army, lived with his wife, Barbara Elliott, a civilian, in an apartment provided for them on the military base at Fort Benning, Georgia. On August 14, 1989, David Elliott received ordinary leave, pursuant to his request, altering his duty status to "on leave" and "absent with authority." Under the terms of his leave, the Army did not expect Elliott to report to duty until the morning of August 30, 1989.

Before his leave expired, Elliott returned to his apartment at Fort Benning. During the evening of August 28, 1989, Barbara Elliott returned to the apartment from work and went to bed early because she felt nauseous. When Barbara went to bed, David was awake watching television, sitting on the living room sofa. The following day, after Barbara failed to report to work, the Army dispatched military police to the Elliotts' apartment. Upon breaking into the apartment, the military police discovered Barbara Elliott on the bed and David Elliott on the sofa, unconscious and comatose. Military personnel immediately transported the Elliotts to a hospital at Fort Benning, where the medical staff treated them for carbon monoxide poisoning resulting from a faulty venting system attached to the water heater in the apartment.

David Elliott remained in a coma for two weeks, and on October 20, 1989, the hospital

discharged him to Montgomery Rehabilitative Hospital in Montgomery, Alabama, a private hospital. Barbara Elliott, although comatose upon her admission to the hospital, recovered sufficiently for the hospital staff to discharge her on September 14, 1989. David Elliott suffered serious, permanent, and debilitating injuries from inhaling carbon monoxide.

## PROCEDURAL HISTORY

After the Army denied their administrative claims, the Elliotts brought this lawsuit for negligence pursuant to the Federal Torts Claims Act in the United States District Court for the Middle District of Georgia.[1] The government moved to dismiss all of David Elliott's claims and Barbara Elliott's claim for loss of consortium, arguing that *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), barred the claims. The district court denied the government's motion and conducted a non-jury trial. Following its case-in-chief, the government renewed its motion for dismissal based on *Feres*. The district court again denied the government's motion.

Following trial, the district court entered judgment for the Elliotts, finding that the carbon monoxide entered the apartment from a defective and deteriorated hot water heater and vent pipe, which resulted from the Army's negligent maintenance of the vent pipe. Additionally, the district court concluded that the Army's failure to properly install, inspect, and maintain the vent pipe violated its own regulations and its duties as a landlord under Georgia law. Finally, the district court found that the evidence proved that the Army's breach of its statutory and regulatory duties proximately caused the Elliotts' injuries and damages, including loss of consortium.

Upon finding the government liable, the district court awarded Barbara Elliott damages of $3,010,110.68, including $750,000 for loss of David's consortium, and awarded David Elliott damages of $8,968,439, including $500,000 for loss of Barbara's consortium.

On January 7, 1993, the United States filed this appeal challenging the district court's judgment with respect to David Elliott's claim for damages and Barbara Elliott's claim for loss of her husband's consortium.[2]

## CONTENTIONS

The government contends that the *Feres* doctrine bars military personnel from filing claims for injuries suffered during an "activity incident to service." The government further contends that providing David Elliott with free housing is an activity incident to his service in the armed services. Thus, the government argues, because Elliott suffered his injuries while engaging in an activity "incident to service," the *Feres* doctrine bars his claims.

The Elliotts contend that the *Feres* doctrine does not apply in this case because David Elliott did not incur injuries while engaged in an activity incident to his service. Because he was on ordinary leave watching television in his apartment, the Elliotts contend that David was not under the compulsion of military orders or involved in military operations; therefore, the *Feres* doctrine does not bar his claims. Thus, they argue, because David's injuries resulted from the Army's failure to provide a safe and hazard-free apartment, they may recover under the Federal Torts Claims Act.

Alternatively, the Elliotts contend that application of the *Feres* doctrine to this case violates the Constitution and is inconsistent with recent cases modifying the holding in *Feres*.

## ISSUES

The appeal presents two issues: (1) whether the *Feres* doctrine denies military persons recovery for injuries incurred while on leave due to an armed forces's negligent maintenance of on-base housing; and (2) whether the *Feres* doctrine bars Barbara Elliott's claim for loss of consortium.

1. The parties conducted settlement negotiations on Barbara Elliott's claims, but could not reach mutually satisfactory terms.

2. Pursuant to an order dated September 8, 1993, the United States waived all rights to appeal the district court's award of damages to Barbara Elliott, excluding her loss of consortium claim, and for David Elliott's loss of consortium claim.

## DISCUSSION

### I. THE FEDERAL TORTS CLAIMS ACT

The Federal Torts Claims Act (FTCA) permits private citizens to bring claims and lawsuits against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1988). In passing the FTCA, Congress relaxed the long standing common law doctrine of sovereign immunity which barred certain tort lawsuits against the United States. *Feres,* 340 U.S. at 139, 71 S.Ct. at 156. Congress enacted the FTCA to provide meaningful remedies for some wrongful government actions to relieve Congress and the public of the burdens and inequities of private bills. *Feres,* 340 U.S. at 139–40, 71 S.Ct. at 156; *Parker v. United States,* 611 F.2d 1007, 1009 (5th Cir.), *reh'g denied,* 615 F.2d 919 (5th Cir.1980). Under the FTCA, the government must compensate victims "in the same manner and to the same extent as a private individual under like circumstances" if found liable. 28 U.S.C. § 2674.

Within the provisions of the FTCA, Congress limited litigants' right to sue in certain circumstances. One limitation, contained in 28 U.S.C. § 2680(j), provides government immunity from lawsuits for service member's injuries "arising out of the combatant activity of the military or naval forces, or the Coast Guard, during time of war." The FTCA, however, contains no express provision barring claims of military personnel during peacetime.

The *Feres* doctrine has never been held to bar all military personnel lawsuits. Beginning with *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), military personnel have successfully brought lawsuits for injuries sustained while serving in the military. In *Brooks,* a civilian employee of the Army driving an Army vehicle struck an automobile, killing a serviceman and injuring another. Applying the plain language of the FTCA, the Supreme Court reasoned that its "terms are clear," and thus, the provision for "any claim" does not mean "any claim but that of serviceman." *Brooks,* 337 U.S. at 51, 69 S.Ct. at 919. In permitting the Brooks' to collect under the FTCA, the Supreme Court distinguished instances where an injury arises out of military service: "[W]e are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented." *Brooks,* 337 U.S. at 52, 69 S.Ct. at 920.

Under *Brooks,* injured service personnel may sue the United States for injuries arising from the negligent conduct of other military personnel. *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) (veteran may bring lawsuit for injuries suffered during surgery in a Veterans Administration hospital); *Parker,* 611 F.2d 1007 (surviving widow may bring lawsuit for wrongful death of serviceman killed while driving on military base); *Pierce v. United States,* 813 F.2d 349 (11th Cir.1987) (serviceman may maintain lawsuit for injuries incurred in motor vehicle collision with another serviceman).

### II. THE *FERES* DOCTRINE

Although Congress chose not to expressly prohibit military personnel from suing for injuries incurred during peacetime, the Supreme Court created a doctrine barring recovery where military personnel suffer injuries arising from activities "incident to" their military service. *Feres,* 340 U.S. at 146, 71 S.Ct. at 159; *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

In *Feres,* the Supreme Court held that military personnel may not recover for injuries received during activities incident to military service. *Feres,* 340 U.S. at 146, 71 S.Ct. at 159.[3] In reaching its decision, the

---

**3.** *Feres* involved three consolidated appeals, two alleging medical malpractice and the third alleging negligence in providing safe housing and maintaining an adequate fire watch. *Feres v.*

Court reasoned that no theory of private liability was "even remotely analogous" to negligence actions brought against superior officers. Thus, the Court concluded, in "the absence of express congressional command," Congress did not intend to waive immunity for injuries arising from service in the military. *Feres*, 340 U.S. at 141, 146, 71 S.Ct. at 157, 159. The Court added that in the absence of such an express waiver, "a district court has no jurisdiction to entertain a suit against the United States" for injuries military personnel incur during activities incident to military service. *Pierce*, 813 F.2d at 352 (quoting *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156 (5th Cir.1981)).

To support this judicially created doctrine, the Supreme Court emphasized three policy justifications: (1) the "distinctly federal" relationship between the United States and its military personnel; (2) the presence of an alternative source of compensation; and (3) the fear of disrupting the military disciplinary structure. *See Stencel Aero Eng. Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977).

The first of these rationales—the distinctly federal relationship—arises from the notion that it makes little sense to have the United States's liability depend on the "fortuity of where the soldier happened to be stationed at the time of the injury." *Stencel,* 431 U.S. at 671, 97 S.Ct. at 2058. The merit and vitality of this rationale, however, is questionable. In any event, this rationale is "no longer controlling," if not completely "erroneous." *Shearer*, 473 U.S. at 58 n. 4, 105 S.Ct. at 3043 n. 4; *Johnson*, 481 U.S. at 695, 107 S.Ct. at 2071 (Scalia, J., dissenting).

The Court premised its second rationale—alternative source of compensation—on the Veterans Benefit Act, which established a statutory scheme for providing pensions to injured military personnel, without regard to negligence on the part of the government, as a substitute for tort liability. *Feres*, 340 U.S.

at 144–45, 71 S.Ct. at 158–59. Thus, it functions like a worker's compensation system. The Court's own inconsistent treatment of this justification, however, renders it significantly less compelling.[4] *Hunt v. United States*, 636 F.2d 580, 598 (D.C.Cir.1980). As Justice Scalia points out, "the presence of an alternative compensation system [neither] explains [n]or justifies the *Feres* doctrine," it only makes it more palatable.[5] *Johnson*, 481 U.S. at 698, 107 S.Ct. at 2073 (Scalia, J., dissenting) (quoting *Hunt*, 636 F.2d at 598). Because of inconsistent treatment, this justification is also not controlling. *Shearer*, 473 U.S. at 58 n. 4, 105 S.Ct. at 3043 n. 4.

Although these two rationales regularly appear when *Feres* issues arise, they have lost much of their vitality, and provide no help in determining when an injury occurs "incident to service." *See Parker*, 611 F.2d at 1012. Thus, the only compelling rationale remaining is the effect of civil lawsuits on the military disciplinary structure.

> In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.'

*Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042 (quoting *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963)).

Because preservation of military discipline lies at the heart of the *Feres* doctrine, courts pay significant deference to the "peculiar and special relationship of a soldier to his superiors." *Muniz*, 374 U.S. at 162, 83 S.Ct. at 1858; *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042. The maintenance of this special relationship is critical because "the need for unhesitating and decisive action by military offi-

---

*United States*, 340 U.S. 135, 136–37, 71 S.Ct. 153, 154–55, 95 L.Ed. 152 (1950).

**4.** As the Supreme Court recognized in *Brooks* the Veterans Benefit Act is neither an exclusive compensation system nor a bar to a serviceman's recovery under the FTCA. *Brooks*, 337 U.S. at 53, 69 S.Ct. at 920.

**5.** In the instant case, this justification is not even palatable because the compensation provided for Elliott is woefully inadequate to care for his debilitating injuries.

cers and equally disciplined responses by enlisted personnel" would be undermined if military officers are exposed "to personal liability at the hands of those they are charged to command." *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). The deference to military judgments arises from the concern that military decision makers may hesitate to act, or may fail to act as forcefully as the situation requires, if they know they will subsequently be called into a civilian court to answer for their actions. *See Jaffee v. United States,* 663 F.2d 1226, 1232 (3d Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367.

■ The circumstances surrounding the Elliotts' injuries do not implicate these concerns. Contrary to the government's arguments, the Elliotts' claims do not involve issues that, if litigated, would harm the military's disciplinary system.[6] *Pierce,* 813 F.2d at 354. We note at the outset that the issues involved in this case (i.e., whether the Army's maintenance of the vent pipe constituted negligence, and whether this negligence caused the Elliotts' injuries) were fully litigated before the district court. Because the parties fully litigated these issues, with no apparent effect on the Army's discipline or decision-making ability, the government's claim that the Elliotts' lawsuit threatens military discipline or undermines the mission of the armed forces, is unconvincing.

Providing and maintaining single-family housing for military personnel does not involve the federal judiciary in sensitive military affairs or the "second-guessing of military orders." *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059. The government concedes that it must provide safe housing. Whether it breached its duty in this case did not demand an inquiry into "sensitive military" issues, or the second-guessing of military orders. Neither party even sought to introduce evidence implicating those concerns.

Moreover, the Elliotts' lawsuit did not require Army officers to "testify in court as to

each other's decisions and actions" because providing safe housing does not require that military officers exercise discretion. *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059. The decision-making process involved in this case is not the type of discretionary decision-making that *Feres* sought to protect. Litigating the issues arising in this case will not make military decision makers "hesitant to act," or cause them to refuse to act out of fear or liability. *See Jaffee,* 663 F.2d at 1232. To the contrary, as the Army's conduct suggests, legal actions forcing compliance with regulations may be the only means to guarantee that the Army follows its own regulations regarding the provision of safe housing.

Finally, the government's contention that it provides on-base housing for "important military reasons" does not withstand critical analysis. Enlisted personnel may live off base if they choose and receive a significant housing stipend if the do. If the Army's "important reasons" for providing military housing really did implicate its decision-making process, or its need for discipline, it is unlikely that the Army would provide service personnel with this off-base housing option.

The circumstances that led to Elliott's injuries and eventual lawsuit pose no threat to military discipline. In fact, the circumstances militate in favor of allowing the lawsuit. Thus, in determining whether David's injuries arose from activities incident to his service, the policy considerations underlying the *Feres* exception cause us to be significantly less constrained.

## III. INCIDENT TO SERVICE

■ To determine whether a rational relationship exists between the activity leading to the service personnel's injury and military service, this court focuses on three factors: the duty status of the service personnel; the situs of the injury; and, the activity the service personnel were engaged in at the time of the injury. *Parker,* 611 F.2d at 1013–15; *Flowers v. United States,* 764 F.2d 759, 760–61 (11th Cir.1985); *Pierce,* 813 F.2d

---

**6.** The fact that the Army permits civilians such as Barbara Elliott to lease housing on base further weakens the government's claim that lawsuits of this type undermine military discipline. A civil-

ian lawsuit brought against the Army for injuries incurred in military housing disrupts military discipline no less than service personnel's lawsuits for identical injuries.

at 353. After applying these three factors, we consider the totality of the circumstances to determine whether the service personnel incurred the injury while involved in an activity "incident to service" in the military. *Parker*, 611 F.2d at 1013; *Pierce*, 813 F.2d at 353. If, upon consideration of the totality of the circumstances, we conclude that the activity is not incident to service, the *Feres* doctrine does not apply, and service personnel may seek recovery under the FTCA.

### A. Duty Status

The particular duty status of service personnel bringing the lawsuit under the FTCA falls along a spectrum. At one end is the individual who has been fully discharged from military service. "If an individual has been discharged from the service, his activities are" generally not considered to be " 'incident to service.' " *Parker*, 611 F.2d at 1013; *Brown*, 348 U.S. at 112, 75 S.Ct. at 1430. At the other end of the spectrum are those activities military personnel perform while on active duty and on duty at the time of the injury. *Parker*, 611 F.2d at 1013; *See Beaucoudray v. United States*, 490 F.2d 86 (5th Cir.1974). In such instances, the person engages in an activity incident to service. When service personnel's duty status falls between these points of the continuum, our inquiry becomes significantly more exacting. *See Pierce*, 813 F.2d at 353.

In prior decisions, we considered the duty status of military personnel at the time of the injury pivotal to our determination. *Parker*, 611 F.2d at 1013–14; *Pierce*, 813 F.2d at 353. In *Parker*, the plaintiff was excused from his regular duties for four days and five nights, leading us to permit recovery because his status "was more like a furlough" than merely being off-duty for the day. *Parker*, 611 F.2d at 1014. Likewise, in *Pierce*, where the soldier who brought the lawsuit received only "discretionary time off," we held that he could recover because he had "arguably left the base on a 'pass.' " *Pierce*, 813 F.2d at 353.

When Elliott sustained his injuries, he was "absent with authority," enjoying full leave from his post. The Army did not expect him to return to service for two more days. The United States argues, however, that Elliott's duty status at the time of his injury is legally irrelevant because *Feres* bars claims arising from the provision of military benefits even when military personnel are on leave when the benefits are provided. While we address this contention in more detail below, we note that the holding in *Feres* severely weakens this argument because the Court barred recovery for three servicemen, in part because they were not on leave or furlough.

The common fact underlying the three cases is that each claimant *while on active duty and not on furlough* sustained injury due to negligence of others in the armed forces. The only issue of law raised is whether the Tort Claims Act extends its remedy to one sustaining 'incident to service' what under other circumstances would be an actionable wrong. This is the 'wholly different case' reserved from our decision in *Brooks v. United States*, 337 U.S. 49, 52 [69 S.Ct. 918, 920, 93 L.Ed. 1200] (1949).

*Feres*, 340 U.S. at 138, 71 S.Ct. at 155 (emphasis added). Under the circumstances of this case, this factor is a strong indicator supporting liability.

### B. Situs of the Injury

Although this circuit tends to hold that *Feres* bars recovery when military personnel injuries arise from an activity on the military compound, no bright-line rule exists which compels such an outcome. *Parker*, 611 F.2d at 1014. A rigid test would substitute for real analysis required to determine whether military personnel incurred injuries in an activity "incident to service." *See Brown v. United States*, 739 F.2d 362, 367–68 (8th Cir.1984), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). Furthermore, the importance of this factor to the court's ultimate decision of whether the injury arose from an activity "incident to service," has been minimized in the Court's subsequent cases. *See Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042 (site of incident not nearly as important as whether the lawsuit requires a civilian court to second guess a military decision).

In *Parker*, we permitted recovery even though the plaintiff's injuries arose from an automobile collision on base. 611 F.2d at

1015. Reasoning that "where an injury occurred should not be emphasized above all other factors," we held "[o]nce it is determined that the service members' duty status might warrant allowing the action but that the injury occurred on the base, the court should go further and inquire into precisely what the person was doing when injured." *Parker,* 611 F.2d at 1014.

In this case, Elliott sustained his injuries while in his apartment, which the Army provided for him and his wife located at Fort Benning. Although the place of Elliott's injury may suggest the application of *Feres,* this fact is not dispositive. Under *Parker,* we must consider the nature of his activity at the time of his injury.[7]

### C. Nature of the Activity

The last factor we consider is the nature of the activity resulting in the military personnel's injury. If we are to "adhere ... to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out [of] or in the course of military duty," we must consider whether the activity from which the injury arose served some military purpose or mission. *Brown,* 348 U.S. at 113, 75 S.Ct. at 144; *see Parker,* 611 F.2d at 1014; *Johnson v. United States,* 704 F.2d 1431, 1439 (9th Cir.1983); *Miller v. United States,* 643 F.2d 481, 494 (8th Cir.1980).

When injured, Elliott was sitting on a couch in his living room watching television, and his wife was in the bedroom asleep. Elliott did not have to report to duty for two more days, and therefore, like the claimants in both *Parker* and *Pierce,* "was not directly subject to military control; he was not under the compulsion of military orders; he was not performing any military mission." *Parker,* 611 F.2d at 1014. *Pierce,* 813 F.2d at 354. In fact, Elliott's injuries "had nothing to do with [his] army career[ ] except in the sense that all human events depend upon what has already transpired." *Brooks,* 337 U.S. at 52, 69 S.Ct. at 920.

In most instances, these three factors determine whether the military personnel's in-

jury arose during an activity incident to service in the military. The government argues, however, that even if Elliott's claims are not barred under the three-part test, they are barred because he sustained his injuries while occupying military housing, and receipt of such a benefit made his activity "incident to service." The government argues that Elliott would not have enjoyed the benefit *but for* his status as military personnel, and supports its position with three cases: *Rayner v. United States,* 760 F.2d 1217 (11th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *Del Rio v. United States,* 833 F.2d 282 (11th Cir.1987); and *Ricks v. United States,* 842 F.2d 300 (11th Cir.1988), *cert. denied,* 490 U.S. 1031, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989). We discuss each to determine their application to the facts of this case.

In *Rayner,* the widow of a deceased serviceman brought a medical malpractice action against the United States for the death of her husband, alleging negligence of the doctors and staff of a military hospital. Based on authority from other jurisdictions, we held that because the provision of benefits to military personnel, due to their status as military personnel, is an activity incident to their service, *Feres* bars suits for medical malpractice. *Rayner,* 760 F.2d at 1219. We did not, however, decide whether this decision applied to other benefits.

In *Del Rio,* a military woman brought a lawsuit against Navy medical personnel alleging negligence in the administration of prenatal care. *Del Rio,* 833 F.2d at 284. We rejected her claims, concluding that the receipt of prenatal care was a benefit incident to her military service because her active military status permitted her to seek prenatal care at the military hospital. *Del Rio,* 833 F.2d at 286. Whether this reasoning applied to other potential benefits was not before the court.

Finally, in *Ricks,* we held that the *Feres* doctrine barred a medical malpractice claim for wrongful death. Citing *Rayner,* we de-

---

7. The government's attempt to analogize *Zoula v. United States,* 217 F.2d 81 (5th Cir.1954), and *Mason v. United States,* 568 F.2d 1135 (5th Cir. 1978) to the facts of this case fails. Although the

court applied the *Feres* doctrine to bar recovery in both cases, and both plaintiffs incurred injuries while on base, neither plaintiff was on leave at the time of his injury.

nied recovery, concluding that the provision of medical benefits to military personnel, because of their status as military personnel, is an activity incident to service and that military medical care constitutes such a benefit. *Ricks*, 842 F.2d at 301. Again we did not address the extension of this reasoning to other benefits.

The government urges us to extend the reasoning in *Rayner, Del Rio,* and *Ricks* to reach all military benefits regardless of how removed from actual military service those benefits may be.[8] We refuse to do so. Because these cases do not involve "other benefits," as that issue has never come before us, they are distinguishable on their facts.

*Feres* does not warrant the broad exception to liability which the government suggests. In its plainest terms, *Feres* involved two medical malpractice lawsuits, addressing the identical issues raised in *Rayner, Del Rio,* and *Ricks.* When applying *Feres* to bar lawsuits in these cases, we neither extended nor modified *Feres*, but merely applied the existing law to the facts in those cases. The broad extension which the government seeks in this case would not, as we have stated, serve the policy goals underlying *Feres.* Such a sweeping application would work absurd results because military personnel could not bring lawsuits for injuries related to *any* benefit they receive, regardless of how tangential, frivolous, or obscure. Because we find no support in Supreme Court precedent or this circuit's precedent for such a broad extension of the *Feres*, we reject the government's all-or-nothing-at-all approach to the "nature of activity" factor.

Finally, the government's contention that military personnel who receive benefits render their duty status legally irrelevant to the determination of whether they incurred their injuries during activity incident to service, ignores the plain terms of the Supreme Court's decision in *Brown.* In *Brown*, the Court permitted a veteran to recover for negligence of medical personnel at a Veterans Administration hospital because he was

no longer on active duty. *Brown*, 348 U.S. at 113, 75 S.Ct. at 143.

Applying the three-part test, we conclude and hold that under the totality of the circumstances David Elliott did not incur his injuries while engaged in an activity incident to his service in the military, as contemplated in Supreme Court and Eleventh Circuit precedent. Military personnel do not engage in activities incident to service when on leave, even if the military owns the apartment in which the service personnel reside. To hold otherwise would ignore the plain requirements of the Supreme Court's decisions in *Brooks* and *Brown*, our decisions in *Parker* and *Pierce*, and the policy considerations underlying the *Feres* doctrine. Because we conclude that David Elliott's lawsuit is not barred, his wife is not barred from recovering on her lack of consortium claim.

### CONCLUSION

The Elliotts' injuries did not arise from an activity incident to his service in the military as *Feres* contemplates. Accordingly, we affirm the decision of the district court.

**AFFIRMED**

---

8. The government contends that other circuits unanimously apply *Feres* to bar suits alleging negligent management of military housing. *See Dozler v. United States,* 869 F.2d 1165 (8th Cir. 1989); *Orken v. United States,* 239 F.2d 850 (6th Cir.1956); *Gursley v. United States,* 232 F.Supp. 614 (D.Colo.1964). This argument is unpersuasive because each of the cases is factually distinguishable and none involved victims injured while on leave.