Thomas DALL and Linda
Dall, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 97–769–CIV–J–21–B.

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 24, 1998.

Robert F. Spohrer, Donald Maximilian Maciejewski, Spohrer, Wilner, Maxwell, Maciejewski · & Matthews, P.A., Jacksonville, FL, for plaintiffs.

Victor M. Halbach, Jr., Lloyd Johnson Sarber, III, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, for defendant.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt.11) and Plaintiffs' Response (Dkt.18) in opposition thereto. Also pending herein is Defendant's Motion for Summary Judgment (Dkt.23) and Plaintiffs' Memorandum (Dkt.29) in opposition thereto.

This is a suit brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, by Plaintiffs Thomas and Linda Dall to recover for injuries sustained by Plaintiff Thomas Dall, an active member of the U.S. Navy, in a plane crash. Specifically, Plaintiffs seek to recover on the ba-

sis of the alleged negligence of employees of the Jax Navy Flying Club, an instrumentality of the U.S. Navy. Defendant has moved to dismiss, asserting that the Court lacks subject matter jurisdiction, pursuant to the *Feres* doctrine, which precludes suit by service members whose injuries arise out of or are in the course of activity incident to service. *See Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950).[1] Plaintiffs oppose such dismissal.

## Background

From a review of Plaintiff's complaint and the evidence submitted by the parties,[2] the Court makes the following findings of fact.

At all times relevant for purposes of the Complaint, Plaintiff Thomas Dall was an active member of the U.S. Navy, and a member of the Jax Navy Flying Club. According to OPNAV Instruction 1710.2E ("OPNAVINST 1710.2E") (Dkt.11, Ex. A), the Naval Regulation authorizing the creation of Navy Flying Clubs, the Jax Navy Flying Club is an instrumentality of the federal government, overseen by the U.S. Navy, for the purposes of morale, welfare and recreation. *See* OPNAV Instruction 1710.2E, § 103. Thomas Dall was permitted to be a member of the Jax Navy Flying Club by virtue of his active military status. *See* OPNAV Instruction 1710.2E, § 209(d)(1).

Thomas Dall owned a Rand Robinson KR–2 airplane, which he had purchased in 1995 for purposes of commuting to Pensacola, Florida, for training to become a U.S. Navy pilot. After the airplane was delivered to Jacksonville, Florida, by its former owner, certain work was performed on the plane by employees of the Jax Navy Flying Club.[3] These individuals were Randy Kovalick ("Kovalick"), a civilian who worked full-time as a mechanic for the Flying Club, and Gilbert Wood ("Wood"), an active member of the U.S. Navy who worked part-time as a Flying Club mechanic and also performed various FAA-required inspections. Specifically, for a time, the plane was at the home of Wood, where one or both of its two seats were moved rearward in the plane. And, later, while the plane was at the Jax Navy Flying Club's on-base facility, a cracked "spinner plate" was replaced, the new parts having been provided by Thomas Dall. By early October of 1995, Thomas Dall had moved the plane to Herlong Airport, a private field in Jacksonville, Florida.

On October 2, 1995, Thomas Dall, who was still on active duty, but "on liberty,"[4] met Brendan Maher ("Maher") at Herlong Airport for the purpose of receiving flight instruction. Maher was a flight instructor employed by the Jax Navy Flying Club. On that day, Thomas Dall, with Maher on board, was taxiing the aircraft on a runway at Herlong at speeds sufficient to cause its tail to lift off the ground, but not intending for the plane's front wheels to leave the ground.[5] On one of these passes, the

---

1. Although there exist statutory exceptions to the waiver of the United States' sovereign immunity effected by the FTCA, *see* 28 U.S.C. § 2680, the *Feres* doctrine is judicially-created.

2. As explained more fully below, for purposes of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in this case, the Court can consider matters outside the pleadings and make findings of fact.

3. It is disputed by the parties whether these employees were acting in the course and scope of their employment when they performed this work on Plaintiff's plane. However, for purposes of considering this motion, although not required to do so, the Court will accept as true Plaintiffs' allegation that the employees were acting in the course and scope of their employment.

4. According to the Naval Personnel Manual, § 3030100 (Dkt.11, Ex. A) submitted by Defendant, "liberty" is "a routinely authorized absence, at the end of which the [military] member is actually on board or in the location from which the member regularly commutes to work."

5. The Complaint alleges at paragraph 5 that Thomas Dall was a passenger in the airplane on October 2, 1995. Yet his undisputed testimony is that he was in control of the plane. This contradiction is apparently explained by the fact that Maher was in the plane as a

plane became airborne. Dall, at Maher's instruction, attempted to keep the plane airborne sufficient to permit it to turn and land, rather than trying to touch back down immediately. Unfortunately, the plane crashed. Dall was severely injured as a result of the crash, primarily by severe burns to parts of his body. He has received many months of care (at Shands Hospital in Gainesville, Florida, and then at an Army facility), followed by rehabilitation, all at the expense of the U.S. Navy.

Plaintiffs allege that the Defendant, through the Department of the Navy and its employees, owed a reasonable duty of care to airplane passengers, such as Thomas Dall, to ensure that the plane was safely maintained and was airworthy. Plaintiffs further allege that, prior to October 2, 1995, the Defendant, acting through its aircraft maintenance personnel, acting in the scope of their employment, were negligent in several respects, including the following: negligent inspection, approval, and rendering of an opinion that the plane was airworthy; negligent maintenance of the airplane; negligent structural modification of the airplane which rendered it unairworthy; negligent failure to warn of such unairworthiness; and other as-yet undetermined acts and omissions.

## Motion to Dismiss for Lack of Subject Matter Jurisdiction

A preliminary issue that must be addressed is the standard to be applied by this Court in addressing Defendant's Motion to Dismiss. Specifically, the parties disagree as to whether or under what circumstances the Court can consider matters outside the pleadings in deciding the motion. The parties arguments are set forth in greater detail below.

Defendant asserts that "[i]t is proper for the District Court to look beyond the jurisdictional allegations of the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists." (Dkt. 11 at 2).

For this proposition, Defendant relies upon the cases of *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988) (holding, in context of review of district court decision, that subject matter jurisdiction under FTCA was lacking because of immunity provided by federal Flood Control Act; "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."); *Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir.1987) (stating that "[i]t is proper for district court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists under Rule 12(b)(1)."); and *Milleville v. United States*, 751 F.Supp. 976, 977 (M.D.Fla.1990) (stating, in context of deciding Feres doctrine-based motion to dismiss for lack of subject matter jurisdiction, "[W]hen considering [such] a motion · . . ., the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.") (citing *McCarthy* ).

In response, Plaintiffs rely on the Eleventh Circuit's decision in *Garcia v. Copenhaver, Bell, & Assoc.*, 104 F.3d 1256 (11th Cir .1997), which they assert "addresse[s] squarely the standard to be applied in a 12(b)(1) Motion to Dismiss." (Dkt. 18 at 3). The *Garcia* opinion recounts the types and sub-types of motions to dismiss for lack of subject matter jurisdiction and the respective standards and limitations each places upon the Court. *See generally id.* at 1260–1261.

 The *Garcia* opinion teaches that there are two types of attacks on subject matter jurisdiction: facial and factual.

---

flight instructor, and is thus deemed the "pilot" by operation of some law or principle not explained by the parties.

*Garcia* at 1261. Facial attacks merely require the Court to examine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction in his complaint. *Id.* For purposes of such attacks, the allegations of the complaint are taken as true. *Id.* However, a factual attack challenges the existence vel non of subject matter jurisdiction, irrespective of the pleadings. *Id.* For purposes of such attacks, matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* However, the precise nature of the factual attack determines the specific standard to be applied and thereby affects the district court's power to make findings of fact and to weigh evidence relating to the facts material to jurisdiction. *Id.*[6]

▉▉▉ Specifically, if the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action, the Court is required to proceed according to the more deferential standard of Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. *Id.* But if the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case free from the restraints of those rules. *Id.* In such a case, no presumptive truthfulness attaches to the allegations of the plaintiff's complaint, and the existence of disputed material facts does not preclude the court from evaluating for itself the merits of the jurisdictional claims. *Id.*

In *Garcia,* an ADEA case, the defendant moved to dismiss on the basis that it was not an "employer" under the Act, and thus that the plaintiff therein was not an "employee" protected by the Act. After hearing evidence at trial, but before the case was submitted to the jury, the district court granted the defendant's motion and dismissed the case. *Garcia* at 1257. The Eleventh Circuit reversed, finding that "[b]ecause ... [the issue of] whether or not the defendant is an 'employer' as defined in the Act goes to the merits of an ADEA case, we believe the Magistrate Judge erred in resolving questions of fact pursuant to Rule 12(b)(1) [, rather than proceeding under Rule 12(b)(6) or 56]." *Id.* at 1259.

Following the example of the *Garcia* court, *see Garcia* at 1262–63 (construing ADEA to determine that issue of whether defendant was an "employer" was an element of a claim under the Act and determining that it was), this Court will construe the elements of Plaintiffs' FTCA negligence claim under Florida law and compare those to the facts necessary to prove the *Feres* bar.

▉▉ The elements of a cause of action for negligence under the FTCA are, in this case, the elements necessary to prove such under the law of Florida. *See* 28 U.S.C. § 1346(b)(1) (providing federal district courts with exclusive jurisdiction over actions for negligent acts or omissions of government employees acting within the scope of their office or employment, in circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred, subject to ch. 171 of Title 28, i.e., §§ 2671–2680, the FTCA); *see also, e.g., Ross v. United States,* 640 F.2d 511, 518 (5th Cir. 1981) ("federal courts generally apply state law, [a]s the Act directs").[7]

Under Florida law, in order to prove the United States' negligence, Plaintiffs must prove a duty or duties on the part of the United States or its agents, breach thereof, a causal connection between that conduct and Plaintiffs' injuries, and damages caused by the breach. *See, e.g., Simon v. Tampa Electric Co.,* 202 So.2d 209, 213

---

**6.** Plaintiffs' Response (Dkt.18) overlooks this distinction between the sub-types of factual jurisdictional attacks. (*See id.* at 4).

**7.** *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11 Cir.1981) (adopting as binding precedent all decisions rendered by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981).

(Fla. 2d DCA 1967) (citing Prosser on Torts). Plaintiffs need not prove any particular kind of relationship or the lack thereof between Plaintiffs and Defendant in order to make their claims, other than, of course, the above mentioned tort duty or duties.

■ However, in order for the *Feres* doctrine to bar Plaintiffs' claims, the Defendant must prove a particular kind of relationship with Thomas Dall—that he was a member of the military service whose injuries "arose out of or [were] in the course of activity incident to service." *See United States v. Johnson*, 481 U.S. 681, 686, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (citing *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950)). The elements necessary to prove the Feres bar thus do not implicate the merits of Plaintiffs' negligence claim. The *Feres* doctrine, although jurisdictional, is therefore akin to an affirmative defense; the doctrine relies on proof of facts separate and apart from those necessary to make out a prima facie case.

Having concluded that the factual issues material to the *Feres* doctrine do not implicate the merits of the plaintiff's cause of action, this Court is free to weigh the evidence and satisfy itself as to the existence of its subject matter jurisdiction to hear the case; no presumptive truthfulness attaches to the allegations of the Plaintiffs' complaint, and the existence of disputed material facts will not preclude this Court from evaluating for itself the merits of the jurisdictional claims. *See Garcia*, 104 F.3d at 1261.

**The *Feres* Doctrine**

*Generally*

■ As noted previously, pursuant to the *Feres* doctrine, "service members cannot bring tort suits against the Government for injuries that 'arise out of or are in the course of activity incident to service.'" *United States v. Johnson*, 481 U.S. 681, 686, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (citing *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950)). As noted in *Johnson*, three basic

rationales underlie the *Feres* doctrine. These are (1) the "distinctly federal" character of the relationship between the Government and members of its armed forces and the fact that military personnel serve in diverse parts of the country or world entirely at the United States' decision, making the application of a "simple, certain, and uniform compensation for injuries or death to those in the armed services" preferable to the application of the tort law of whatever place the service member might be serving; (2) the existence of these generous statutory disability and death benefits for service members; and (3) the fact that suits brought by service members for injuries incurred incident to service are the types of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness, because suits based upon service-related activity necessarily implicate military judgments and decisions that are inextricably intertwined with the conduct of the military mission. *See Johnson*, 481 U.S. at 688–691, 107 S.Ct. 2063.

*Eleventh Circuit Precedent on Application of the Feres Doctrine*

■ Although acknowledging that the *Feres* doctrine cannot be reduced to any set of bright-line rules, and stating that the determination of whether a particular activity is incident to service within the meaning of *Feres* is based on the totality of the circumstances, the Eleventh Circuit has enunciated a three-part test to be applied in determining this key issue of activity incident to service. *See Pierce v. United States*, 813 F.2d 349, 352–53 (11th Cir. 1987). These factors include (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the service member was engaged in at the time of the injury. *Pierce*, 813 F.2d at 353. The Eleventh Circuit has stressed the importance of considering the above factors in conjunction with an analysis of the third *Feres* rationale: whether the claim asserted will implicate civilian

courts in conflicts involving the military structure, including military decisions and military discipline. *Id.* at 352, 354.

*Specific Authority Relied Upon by the Parties*

In support of their argument that the *Feres* doctrine bars this suit, Defendant relies primarily on a triad of cases involving other military flying clubs. These are the cases of *Walls v. United States*, 832 F.2d 93 (7th Cir.1987); *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979); and *Eckles v. United States*, 471 F.Supp. 108 (M.D.Pa.1979). Additionally, Defendants rely on other cases wherein the *Feres* doctrine was applied to bar injuries sustained by service members in "recreational" activities. These latter cases will not be discussed.

Plaintiffs accuse the Defendant of overlooking the controlling Eleventh Circuit authority of *Elliott v. United States*, 13 F.3d 1555 (11th Cir.1994)—which Plaintiffs assert rejects Defendant's broad application of the *Feres,* doctrine—and instead citing to the Court "ten-to-twenty-year-old cases from other circuits involving Flying Club and other recreational activities." (Dkt. 18 at 5). After leveling this accusation, Plaintiffs proceed to rely very heavily on *Elliott* throughout their Response (Dkt.18). Plaintiffs, however, have themselves overlooked the fact that the *Elliott*

opinion they rely upon has been vacated and is no longer even persuasive, much less controlling, authority in this Circuit. *See Elliott v. United States*, 28 F.3d 1076 (11th Cir.1994) (vacating prior panel opinion).[8] In fact, the original panel opinion in *Elliott,* the centerpiece of Plaintiffs' Response, was vacated nearly four years before Plaintiffs filed such Response. (*See* Dkt. 18, filed March 2, 1998).

Plaintiffs also assert that the Defendant's interpretation of the *Feres* doctrine goes against Supreme Court precedent. As the above discussion shows, in *Johnson,* the Supreme Court made clear that all of the rationales originally underlying the *Feres* doctrine were still valid.[9]

The flying club cases of *Walls, Woodside,* and *Eckles* cited by Defendant are, contrary to Plaintiffs' assertion, rather closely on point, quite persuasive and, in this Court's opinion, do not otherwise conflict with Circuit precedent. Nor, in this Court's opinion, do they conflict with the Supreme Court's most recent significant discussion of the *Feres* doctrine in *Johnson.* Brief discussion of these flying club cases follows.

The case of *Walls v. United States*, 832 F.2d 93 (7th Cir.1987),[10] involved an FTCA suit by a serviceman who sought to recover for injuries sustained in the crash of an Air Force Aero Club airplane, allegedly

---

**8.** Specifically, some five months after the panel opinion in *Elliott* was issued, in July of 1994, rehearing en banc was granted and the panel's opinion was vacated. *See Elliott v. United States*, 28 F.3d 1076 (11th Cir.1994). Shortly thereafter, in November 1994, the en banc court issued its opinion, per curiam, stating that the judges of the en banc court were equally divided on the disposition of the case and that the *judgment* of the district court was thus affirmed by operation of law. *See Elliott v. United States*, 37 F.3d 617, 618 (11th Cir.1994). The en banc court did not reinstate, or otherwise in any way approve of, the original panel decision. *See id.* In fact, the split of the en banc court in *Elliott* strongly suggests that half of the Judges of the Eleventh Circuit, or at least those active in 1994, *disagreed* with the original panel's opinion.

**9.** It is interesting to note that in *Johnson* the Supreme Court cited with approval the *Woodside* case, a flying club case relied upon by Defendant. *See Johnson,* 481 U.S. at 687 n. 8, 107 S.Ct. 2063. Additionally, this Circuit has expressly noted that the *Johnson* decision confirmed the Supreme Court's continued strict application of the *Feres* doctrine in spite of lower federal courts' tendencies to stray somewhat from its teachings. *See Kitowski v. United States,* 931 F.2d 1526, 1529 (11th Cir. 1991).

**10.** It is noteworthy that *Walls* was decided after the Supreme Court's decision in *Johnson,* which opinion the panel took express note of in rendering that decision.

caused by the pilot's (another serviceman) negligence and the Aero Club's failure to supervise that pilot. *Id.* at 94. Walls, who was active duty but on leave, had arranged to ride along with the serviceman, who was flying a plane leased to the Aero Club from Colorado to Sacramento. *Id.* The crash occurred in Utah after a refueling stop. *Id.*

The district court in *Walls* applied the *Feres* doctrine to bar suit therein, relying on the third *Feres* rationale to conclude that the suit could have adverse effects on military discipline and decision making. *Walls*, 832 F.2d at 95. While acknowledging that the soldier was on leave, the district court was still persuaded that military affairs were implicated because Walls was still subject to military discipline and supervision and was taking advantage of a privilege generally restricted to the military. *Id.* The Seventh Circuit expressly agreed and affirmed on this basis. *Id.*

The case of *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979), involved an FTCA suit by the widow of a serviceman who sought to recover for the wrongful death of her husband, Schroeder, in the crash of an Air Force Aero Club airplane, allegedly caused by one Hanna, a civilian flight instructor employed by the Aero Club. *Id.* at 136–37. Schroeder, who was on active duty but on leave, was receiving flight instruction from Hanna when the plane crashed, killing them both. *Id.* at 137.

The district court in *Woodside* applied the *Feres* doctrine to bar suit therein based on its conclusion that Schroeder was injured while engaged in an activity incident to service. *Woodside*, 606 F.2d at 137–38. The district court so concluded based on the facts that (1) off-duty recreational activities, such as the Aero Club, were nonetheless incident to military service; (2) Schroeder's flight began and ended on a military base; and (3) government regulations required covenants not to sue to be executed by non-active Aero Club members, indicating an expectation that

*Feres* would apply to active members. *Id.* at 138, 71 S.Ct. 153.

In affirming the judgment of the district court in *Woodside*, the Sixth Circuit substantially expanded upon the first conclusion of the district court. The Sixth Circuit expressly rejected the contention that the concept of incident to service was limited to instances where the injury occurred in the course of military duty, *Woodside*, 606 F.2d at 140, holding that such concept was not a narrow term limited to military training, field maneuvers, or combat situations, but rather included military-sponsored recreational activities, even though such were not an essential or integral part of the military mission, as long as there is a proximate relationship between service member's activity and the Armed Forces. *Id.* at 141. Finding that Schroeder was an active duty serviceman able to gain membership in and utilize the Aero Club by virtue of that service; that the Aero Club was an activity established by the Air Force to promote morale; that the Aero Club was under the overall supervision of the base commander; and myriad other ways in which the Aero Club involved military personnel and was subject to military control, the Sixth Circuit concluded that *Feres* barred the suit, even though it recognized that Schroeder was on leave at the time of his death and not subject to the immediate control of military authorities. *Id.* at 142, 71 S.Ct. 153.

The case of *Eckles v. United States*, 471 F.Supp. 108 (M.D.Pa.1979), involved an FTCA suit by the widow/executrix of a serviceman who sought to recover for the wrongful death of her husband, Eckles, caused by the crash of a military Aero Club airplane, based on the Aero Club flight instructor's failure to adequately train Eckles, the alleged improper rigging of the airplane, and negligence by the Federal Aviation Administration. *Id.* at 108. Eckles, who was active duty but on leave, was flying solo when his plane entered a spin or stall/spin from which he was unable

to recover. *Id.* at 109. The plane crashed and Eckles was killed. *Id.* at 108.

The district court in *Eckles* applied the *Feres* doctrine to bar suit therein based largely on the same rationale of the district court in *Woodside*. *See Eckles,* 471 F.Supp. at 110–11 (citing, inter alia, district court opinion in *Woodside* ). While acknowledging that the accident did not occur on a military base, the district court in *Eckles* was persuaded by the facts that Eckles was on active duty at the time of the accident, that he was able to be a member of the Aero Club by virtue of his duty status, and that the plane was owned by the Aero Club, *Id.* at 111. Lastly, the court concluded that allowing suit in such an instance would have serious adverse effects on military discipline and military relationships, invoking the third rationale of *Feres* and requiring that the suit be barred thereby. *Id.* at 111.

### Conclusion

 Based upon the allegations of Plaintiffs' Complaint and the Court's findings of fact, the Court concludes that Thomas Dall was injured while engaging in activity incident to his active military service and thus that subject matter jurisdiction over this suit is barred by the *Feres* doctrine.[11]

Applying the Eleventh Circuit's *Pierce* factors, it is clear that Thomas Dall was an active member of the U.S. Navy, on liberty, when he was injured, and that the activity in which he was engaging was one sponsored by the U.S. Navy, which Thomas Dall had the opportunity to engage in by virtue of his active military status. Though the actual injuries suffered by Thomas Dall occurred at a private airport, and not at a military facility, all of the alleged negligent acts and omissions were performed by Jax Navy Flying Club employees, and one significant allegedly negligent act occurred at the Navy Flying Club facilities.

Applying the first two *Feres* factors, it is clear that Thomas Dall has received full medical care at the expense of the U.S. Navy, and that provision of such is clearly preferable to the vagaries and delay of a tort lawsuit. But, most importantly, the Court concludes that to permit this suit would necessarily implicate and question the operation of an instrumentality of the U.S. Navy and the actions of its active military employees and supervising officers.

In similar cases and for the same reasons, other federal courts, including two Circuit Courts, have agreed that the *Feres* doctrine should bar such flying club suits where the flying clubs were also "nonappropriated fund instrumentalities" of branches of the U.S. military, maintained for purposes of morale, welfare, or recreation, (*Walls; Woodside; Eckles* ); where the alleged negligence was in aircraft maintenance (*Walls* ) or negligent flight instruction (*Woodside* ); where the crashes occurred off of a military base (*Walls; Woodside; Eckles* ); and where the service member's participation was by virtue of his active military status (*Walls; Woodside; Eckles* ), a purely personal interest and not connected with or required by his active military status (*Woodside* ).[12] Having ex-

---

**11.** The Court is not persuaded that this decision should be postponed by virtue of the arguments and objections in Plaintiffs' Response (i.e., that the United States is delinquent in responding to discovery bearing on the issues material to the *Feres* doctrine; that the United States has taken inconsistent positions by denying in its answer that its employees were acting in the course and scope of their employment while filing a motion to dismiss which is predicated on such action). Further, to the extent that such arguments relate to matters of discovery, which is now closed, in the several months since this motion was filed but before discovery closed, Plaintiffs have had more than ample time to file any necessary motions to compel and, assuming relevant, material discovery was produced, to move to supplement their Response with such.

**12.** This is not to imply that the *Walls* and *Eckles* cases involved military personnel who were participating in flying club activities because required to do so.

amined the applicable authority and the facts of this case, this Court agrees.[13]

Accordingly, upon consideration thereof, it is hereby **ORDERED and AD-JUDGED:**

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt.11) is **GRANTED.**

2. This case is **DISMISSED with prejudice.**

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiffs.

4. The Clerk is **DIRECTED** to close this file and terminate all other pending motions, including Defendant's Motion for Summary Judgment (Dkt.23).

---

**13.** It should be noted, although such should be clear from the foregoing, that the granting of Defendant's motion is not the mere result of the Plaintiffs' effective failure to respond to Defendant's motion by virtue of their having relied on vacated precedent.