# SUPREME COURT OF THE UNITED STATES

CAROL V. CLENDENING, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF GARY J. CLENDENING *v.*
UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 21–1410.　Decided November 7, 2022

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, dissenting from denial of certiorari.

While stationed at Camp Lejeune, Gary Clendening allegedly was exposed to toxins and contaminated water. He later died of leukemia. Gary's widow, petitioner Carol Clendening, then filed this tort suit against the United States. For most plaintiffs like Carol, the Federal Tort Claims Act (FTCA) waives the United States' sovereign immunity and allows for recovery. Nevertheless, the District Court determined that Carol's suit was barred by *Feres* v. *United States*, 340 U. S. 135 (1950), which held that military personnel cannot sue the United States for any injury "incident to military service," *id.,* at 144, even if the FTCA would otherwise allow the suit. Affirming, the Court of Appeals noted that "criticism of the *Feres* doctrine abounds," but it "'le[ft] to [this] Court the prerogative of overruling its own decisions.'" 19 F. 4th 421, 431 (CA4 2021).

We should accept the invitation. As I have explained several times, *Feres* should be overruled. The FTCA "'renders the United States liable to *all* persons, including servicemen, injured by the negligence of Government employees.'" *Lanus* v. *United States*, 570 U. S. 932 (2013) (opinion dissenting from denial of certiorari) (quoting *United States* v. *Johnson*, 481 U. S. 681, 693 (1987) (Scalia, J., dissenting)). The Act expressly excepts only a specific class of military-related claims: those "arising out of . . . combatant activities

. . . during time of war." 28 U. S. C. §2680(j). Nothing in the Act bars suits by servicemen based on their military status alone. *Doe* v. *United States*, 593 U. S. ___, ___–___ (2021) (THOMAS, J., dissenting from denial of certiorari) (slip op., at 1–2). Yet, in *Feres*, this Court invented an atextual, policy-based carveout that prevents servicemen from taking advantage of the FTCA's sweeping waiver of sovereign immunity. *Feres* "'heartily deserves the widespread, almost universal criticism it has received.'" *Lanus*, 570 U. S., at 933 (opinion of THOMAS, J.) (quoting *Johnson*, 481 U. S., at 700 (Scalia, J., dissenting)); see also J. Turley, *Pax Militaris*: The *Feres* Doctrine and the Retention of Sovereign Immunity in the Military System of Governance, 71 Geo. Wash. L. Rev. 1, 68 (2003) ("At a minimum, *Feres* represented a total departure from principles of judicial restraint and deference to the political branches"). I write yet again to highlight the consequences of this Court's refusal to reconsider *Feres*.

The lower courts' attempts to apply *Feres*' "incident to military service" standard are marked by incoherence. One might be surprised to learn, for example, that a serviceman's exposure to excessive carbon monoxide at Fort Benning is not incident to service, *Elliott* v. *United States*, 13 F. 3d 1555, 1556–1557 (CA11 1994),[1] but exposure to contaminated drinking water at Camp Lejeune is, *Gros* v. *United States*, 232 Fed. App. 417, 418–419 (CA5 2007) (*per curiam*).[2] Or that the dissemination of personal materials stored on a military base by fellow servicemen is not

---

[1] In *Elliott*, rehearing en banc was granted and the panel opinion vacated, 28 F. 3d 1076; the en banc court then affirmed the result by an equally divided vote, 37 F. 3d 617.

[2] The Camp Lejeune Justice Act of 2022, Pub. L. 117–168, §804, 136 Stat. 1802–1804, does not alter the availability of recovery under the FTCA. Rather, the Act provides an alternative remedy to the FTCA that presupposes multiple routes to recovery. See §804(e)(1), *id.,* at 1803. It is also much narrower in scope than the FTCA.

incident to service, *Lutz* v. *Secretary of the Air Force*, 944 F. 2d 1477, 1478–1479 (CA9 1991), but a West Point cadet's *rape* by a fellow cadet is, *Doe* v. *Hagenbeck*, 870 F. 3d 36, 44–49 (CA2 2017).

Far from limiting *Feres*, this Court "'has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military.'" 19 F. 4th, at 428. This expansion has led to further distortion and incoherence in our jurisprudence. Take, for example, *Air & Liquid Systems Corp.* v. *DeVries*, 586 U. S. \_\_\_ (2019). There, manufacturers provided the Navy with asbestos-free equipment—to which *the Navy* subsequently added asbestos, allegedly causing cancer in servicemen-decedents. See *Daniel* v. *United States*, 587 U. S. \_\_\_, \_\_\_–\_\_\_ (2019) (THOMAS, J., dissenting from denial of certiorari) (slip op., at 1–2). Yet the Navy's immunity under *Feres* led us to "twis[t] traditional tort principles" to allow for recovery against the manufacturers. *Id.,* at \_\_\_ (slip op., at 2). The force of *Feres* thereby distorts even longstanding principles of tort law. *E.g., Sebright* v. *General Elec. Co.*, 525 F. Supp. 3d 217, 241 (Mass. 2021) (significantly limiting a sophisticated-purchaser defense because, under *Feres*, the serviceman-plaintiff "might not have recourse against anyone other than equipment manufacturers").

Further, *Feres'* professed concern with military discipline is anomalous, if not downright hypocritical, against the backdrop of military law more generally. We preclude run-of-the-mill tort claims that are "remotely related" to military status because of their potential to undermine military discipline.[3] But we have "never held . . . that military per-

---

[3] "[W]e have repeatedly cited the later-conceived-of 'military discipline' rationale as the 'best' explanation for" *Feres. United States* v. *Johnson*,

sonnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell* v. *Wallace*, 462 U. S. 296, 304 (1983). To the contrary, servicemen "routinely sue their government and bring military decision-making and decision-makers into court" seeking injunctive relief. Turley, 71 Geo. Wash. L. Rev., at 21. For example, we recently left in place an injunction that dictated personnel decisions to the Navy. *Austin* v. *U. S. Navy Seals 1–26*, 595 U. S. ____ (2022) (partially staying injunction that prevents Navy from taking any adverse personnel actions against Navy SEAL plaintiffs, but only "insofar as it precludes the Navy from . . . making deployment, assignment, and other operational decisions"). Apparently, the Court cares about the chain of command when considering money-damages suits against the Government, but our concerns evaporate when servicemen seek injunctions against their superior officers' personnel decisions.

That is completely backwards. "Injunctions and regulations tell people what they must do and what they must not do, and it is *these* types of intrusions that would entangle courts in military affairs." *Taber* v. *Maine*, 67 F. 3d 1029, 1048 (CA2 1995). By contrast, "[t]ort judgments do neither of these things." *Ibid.*; see also *Johnson*, 481 U. S., at 700 (Scalia, J., dissenting) ("[P]erhaps Congress assumed that, since liability under the FTCA is imposed upon the Government, and not upon individual employees, military decisionmaking was unlikely to be affected greatly"). If military discipline is not sufficiently harmed by judicial decisions countermanding military personnel choices, it is difficult to see how *Feres*' concern with preserving the chain of command has any validity.[4]

—————

481 U. S. 681, 698 (1987) (Scalia, J., dissenting).

[4] The courts below held that one of Clendening's claims survived *Feres* but was barred under the FTCA's textual discretionary-function exception. See 19 F. 4th 421, 432–436 (CA4 2021); 28 U. S. C. §2680(a). The

It would be one thing if Congress itself were responsible for this incoherence. But Congress set out a comprehensive scheme waiving sovereign immunity that we have disregarded in the military context for nearly 75 years. Because we caused this chaos, it is our job to fix it.

---

FTCA's specific exceptions could mitigate the discipline concerns driving the maintenance of *Feres*' atextual "incident to military service" exception. See *Johnson*, 481 U. S., at 699–700 (Scalia, J., dissenting) ("[P]erhaps Congress assumed that the FTCA's explicit exclusions would bar those suits most threatening to military discipline, such as claims based upon combat command decisions, 28 U. S. C. §2680(j); claims based upon performance of 'discretionary' functions, §2680(a); claims arising in foreign countries, §2680(k); intentional torts, §2680(h); and claims based upon the execution of a statute or regulation, §2680(a)").